## Richmond.

### Exchange Building and Investment Co. v. Bayless and Others.

#### February 14, 1895.

1. Subrogation—*Deed of Trust—Additional Security.*—A surety who was not originally bound for the debt, but who comes in during the prosecution of a remedy against the principal for the debt, cannot, by subrogation, obtain a preference over the creditor of the principal whose debt is secured by a lien which attached before the surety became bound. So, where a debt is secured by a deed of trust, and the debtor afterwards gives a negotiable note with accommodation endorsers, as additional security for a part of the debt, and the endorsers pay the note, they cannot be subrogated to the rights of the creditor to his detriment in the collection of the residue of his debt.

2. Subrogation—*Doctrine.*—The doctrine of subrogation is of purely equitable origin and nature, and its operation is always controlled by equitable principles. It is never enforced so as to defeat or interfere with a superior or equal equity of third persons, or with the legal right of third persons growing out of an express contract.

3. Change of Contract—*Release of Surety—Extension of Time—Reservation of Rights.*—Any change of the contract by the principal, however slight, without the consent of the surety, releases the latter from all further liability. And where extension of time of payment is given to the principal, without the consent of the surety, in pursuance of a binding legal contract, the surety is at once released from his obligations. But if, in the contract for extension, all the rights and remedies of the surety are preserved unimpaired, so that he has the same rights and remedies after the contract as before, the surety is not discharged.

Appeal from a decree of the Circuit Court of the city of Roanoke, pronounced November 18, 1893, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson*, and *C. B. Moomaw*, for appellant.

*Smith & King*, for appellee, W. M. Yager.

*Penn & Cocke*, for appellee, Wm. H. Bayless.

HARRISON, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the city of Roanoke, in a cause wherein the Exchange Building and Investment Company was plaintiff, and the Virginia Finance Company, Wm. H. Bayless, Wm. M. Yager and others were defendants.

The object of the suit was to ascertain the liens on a certain lot in the city of Roanoke, determine the priorities, and sell the lot for the satisfaction of the plaintiff's debt. The court on the 18th day of November, 1893, entered a decree, declaring that after the payment of costs, &c., the defendant, W. H. Bayless, held the first lien, the defendant, W. M. Yager, held the second lien, the plaintiff, the Exchange Building and Investment Company, held the third lien, and that the property should be sold, and the proceeds applied to the payment of the liens in the order named. From this decree, the Exchange Building and Investment Company was granted an appeal to this court.

The record discloses the following facts:

On July 2, 1890, W. H. Bayless and others, sold and conveyed to the Exchange Building and Investment Company a parcel of land fronting on Campbell street, in the city of Roanoke. A part of the purchase price was paid in cash, and four notes executed by the purchaser for the residue, two notes

for $1,666.66 each, payable in one year, and two for $1,666.66 each, payable in two years, all executed to Wm. H. Bayless and his associates; said Bayless subsequently becoming the owner of all four of said notes. Contemporaneously with the conveyance, a deed of trust was given on the lot to secure the four purchase-money notes already described.

Subsequently to this transaction, the Exchange Building and Investment Company sold and conveyed this same lot to the Virginia Finance Company, upon the following terms: the purchaser making a cash payment, undertaking and agreeing to assume and pay off the four notes of $1,666.66 each, executed by the Exchange Building and Investment Company to W. H. Bayless and others, and for the residue executing two notes to said Exchange Building and Investment Company, each for the sum of $2,500, and securing the same on said lot by deed of trust. So that, after this latter transaction was consummated, the Virginia Finance Company was the owner of the lot in question, subject to two mortgages, the first, the four notes of the Exchange Building and Investment Company to W. H. Bayless, each for $1,666.66 assumed by it; and second, two notes of its own, each for $2,500, due to the Exchange Building and Investment Company.

The Virginia Finance Company, under its purchase, having assumed payment thereof, became the *principal* debtor as to the four notes secured in the first mortgage, and the Exchange Building and Investment Company became surety for those notes; and this relation was recognized and accepted by Wm. H. Bayless the creditor, in his dealing with the parties.

When the two one-year notes of the Exchange Building and Investment Company to Bayless for $1,666.66 each, became due, the Virginia Finance Company was unable to pay them, and not wishing the property to be sold, Wm. M. Yager, one of the principal stockholders in said company, and also one of the directors, and its general manager, sought W.

H. Bayless, the creditor, and procured from him an extension of time, evidenced by a contract in writing executed by the Virginia Finance Company, recognizing its primary liability to pay the Bayless notes; and, in consideration of the extension of time, giving as additional security, three negotiable notes aggregating $3,466.64. These notes were each endorsed by W. M. Yager & Co., and J. B. Levy; W. M. Yager & Co. being W. M. Yager and J. B. Levy, and, as before stated, W. M. Yager, being stockholder, director, and general manager of the Virginia Finance Company, and J. B. Levy being stockholder, director, and president of said company. When these three negotiable notes thus endorsed became due, they were paid by W. M. Yager, one of the endorsers. The Exchange Building and Investment Company consented to the extension of time thus given the Virginia Finance Company by Bayless, the creditor.

The first error assigned is that the Circuit Court of Roanoke, by the decree complained of, subrogated Wm. M. Yager to the rights of the original creditor, W. H. Bayless, under the deed of trust given on the lot to secure Bayless. In considering this question, it must be borne in mind that the Exchange Building and Investment Company bore two relations to the Virginia Finance Company, the first was that of surety for the first mortgage debt of Bayless, assumed by the Virginia Finance Company, and the second was that of creditor in the second mortgage debt of $5,000; the aggregate of these two debts representing the balance due from the Virginia Finance Company for the lot, as purchaser from the Exchange Building and Investment Company. As a means of paying part of this purchase money, the debtor executed three negotiable notes aggregating $3,466.64, endorsed by Yager, and delivered them to Bayless to be applied, when paid, to the discharge of that portion of said purchase money held by him. The effect of the decree of the Circuit Court is to put Yager,

after paying these notes, in a better position than his principal's creditor, the Exchange Building and Investment Company. In other words, it gives him a lien on the lot, ahead of the remaining purchase money still unpaid and due to the vendor of his principal, the Virginia Finance Company. A surety who was not originally bound for the debt, but who comes in during the prosecution of the remedy for the debt against the principal cannot, by subrogation, obtain a preference over creditors of the principal, whose liens attached before the surety became bound. As to any such prior interest in the property he must occupy the place of debtor. Brandt on Suretyship and Guarantee, § 308.

The doctrine of subrogation being a doctrine of purely equitable origin and nature, its operation is always controlled by equitable principles. "It is, therefore, never enforced so as to defeat or interfere with a superior, or equal equity of third persons, or with the legal right of third persons, growing out of an express contract." Pom. Eq. Juris. sec. 1419, and note. To give Yager, the voluntary endorser of the Virginia Finance Company, a lien on this lot prior in dignity to the Exchange Building and Investment Company, the purchase money creditor of said finance company, would be to violate the contract rights between the parties; and subrogation is never enforced when it would be in the nature of a breach of contract to do so.

The circumstances of the transaction and the preponderance of evidence show that these notes, gotten up at Yager's instance, were intended when paid to be a discharge of the two one-year notes held by Bayless, and that it was not proposed, or intended, that the deed of trust should be kept alive in favor of Yager, even were that permissible in view of the rights of the Exchange Building and Investment Company. Yager himself, in his deposition, says the notes were turned over to Bayless "*for the purpose of the payment of those two*

*notes of the Exchange Building and Investment Company of $1,666.66 each."* Yager was the representative and general manager of the debtor company, and this mode of paying the debt of his company was adopted by him in consideration of further time extended his company by Bayless, the creditor.

As an innocent accommodation endorser for the Virginia Finance Company, Yager could not, under the circumstances, be subrogated as a lien creditor upon this lot, prior in dignity to the lien already resting upon it in favor of the Exchange Building and Investment Company. In view of his relations to this transaction, and to the Virginia Finance Company, as the manager of its affairs, the reasons for his not being thus subrogated are greatly strengthened. The court is, therefore, of opinion that the Circuit Court erred in subrogating W. M. Yager to the rights of Bayless under the deed of trust securing the latter's debt on the lot mentioned in these proceedings.

It further appears from the record that when the two notes, each for $1,666.66, due in two years, and secured to W. H. Bayless by deed of trust on this lot, became due, the Virginia Finance Company was again unable to meet them, and through its general manager, W. M. Yager, a contract bearing date August 22, 1892, was secured, reduced to writing, and signed by W. H. Bayless, the Virginia Finance Company, J. B. Levy, president, and W. M. Yager, whereby, in consideration of certain negotiable notes given by the Virginia Finance Company, endorsed by W. M. Yager, and delivered to W. H. Bayless as collateral security for his debt, the time for the payment of said debt was postponed. This contract was made without the knowledge or consent of the Exchange Building and Investment Company, which stood in the relation of surety for the debt, the payment of which was postponed by the contract aforesaid.

The Circuit Court held that this contract of August 22,

1892, released the Exchange Building and Investment Company from all personal liability on the said two-year notes of $1,666.66 each, but that the said contract did not release the lien held by Bayless for their security on the lot.

This decree is objected to by the appellant, who contends that the contract for time released the lien of Bayless, which was prior in time on the lot, as well as the personal liability of the appellant for said debt.

The decree is objected to by the appellee, Bayless, because it released the Exchange Building and Investment Company from personal liability to him for said debt.

There is no principle of law better settled than the one contended for by the appellant, viz., that any change of the contract by the principal, however slight, without the consent of the surety, releases the latter from all further liability. Extension of time for payment is the most frequent form in which the creditor so deals with the principal as to discharge the surety, and whenever such indulgence is granted in pursuance of a binding legal contract, the surety is at once released from his obligations. 2 Daniel on Negotiable Instruments, sec. 1312. The same author, in sec. 1313, says:

"But this principle on which sureties are released, is not a mere shadow without substance. It is founded on the restriction of the rights of the sureties by which they are supposed to be injured. Therefore, when there is a legal impossibility of injury, the principle does not apply."

Hence it is equally well settled that, if, in a contract between the creditor and the principal debtor for an extension of time, all the rights and remedies of the surety are reserved unimpaired, the surety is not discharged. 2 Brandt on Suretyship and Guaranty, sec. 376.

Daniel, in his work on Negotiable Instruments, in giving the elements or circumstances that must unite in order to con-

stitute an indulgence which will discharge the surety, states the 5th to be as follows: "The indulgence must be without reservation of remedy against the surety, for that would reserve the surety's recourse on the principal." See also 2 Amer. Leading Cases, (4th ed.), Hare & Wallace notes, p. 422, where it is said, in *Harris* v. *Brooks :* "It follows from this reasoning, that an agreement to give time to the debtor, which reserves a right to sue at the request of the surety, will not be effectual as a defence in an action brought against the latter."

Applying these principles to the contract of August 22, 1892, it is clear that no right or remedy of the Exchange Building and Investment Company, as surety for the Virginia Finance Company, has been impaired thereby. On the contrary, the creditor, W. H. Bayless, has, with great care and particularity, reserved to the surety all his rights and remedies by inserting in the contract a clause in these words:

"This contract and agreement is made subject to this provision, *that the Exchange Building and Investment Company, may, at any time, require the property to be sold under the deed of trust aforesaid, or the collection of the said two notes enforced, and nothing herein contained shall operate to impair any right the Exchange Building and Investment Company may have to require the enforcement of the deed of trust aforesaid, or of the collection of the said notes.*"

The rights and remedies of a surety could hardly be reserved in a contract in plainer or more unambiguous terms. There was not a right possessed by the Exchange Building and Investment Company before this contract was made that it did not have with equal force afterwards. It reserves the right to proceed immediately, at the request of the surety, and therefore cannot be effectual as a defence against the liability of said surety. It follows, therefore, that the Circuit Court erred in releasing the Exchange Building and Invest-

ment Company from its personal liability to W. H. Bayless on the two notes held by him, and for which said company was bound as surety.

For the foregoing reasons the court is of opinion that the decree complained of is erroneous, and must be set aside, and this court will enter such decree as the Circuit Court of the city of Roanoke ought to have entered.

REVERSED.