A. R. HOLBERT *v.* SAFE INSURANCE COMPANY

(No. 7561)

Submitted October 3, 1933. Decided October 17, 1933.

222

A. G. Mathews, for defendant in error.
S. A. Powell, for plaintiff in error.

KENNA, JUDGE:

A. R. Holbert brought notice of motion against Safe Insurance Company of Harrisville, West Virginia, in the circuit court of Calhoun County upon a policy of fire insurance alleging a loss of $3,000.00. The defendant appeared and filed a special plea setting forth that plaintiff carried total insurance upon the property destroyed by fire amounting to $7,000, including the policy sued on; that the loss of the plaintiff was due to the negligent act of the Standard Oil Company and that that company was liable to respond in full to all damages occasioned by reason of the fire; that plaintiff had agreed with the Standard Oil Company that the total loss amounted to $13,000.00 and had accepted payment of $6,000.00 from that company upon the amount of the total loss and in consideration thereof had executed an agreement which is set up in full in the special plea, and is as follows:

"I, A. R. Holbert, acknowledge the receipt of Six Thousand (6000) Dollars, this day voluntarily paid to me for and on behalf of the Standard Oil Company of New Jersey.

"This payment is accepted by me on the following basis:

"It is intended to be and is accepted by me as a compromise settlement and release of all my claims for damages, against the Standard Oil Company of New Jersey its agents and servants, by reason of the fire which burned real and personal property owned by me and located at Big Bend, West Virginia, on May 9, 1932, except the sum of Seven Thousand (7000) Dollars, the amount of fire insurance carried by me on said burned property with the Fidelity Phœnix Fire Insurance Company of New York, Camden Fire Insurance Association of Camden, New Jersey, Safe Insurance Company of Harrisville, West Virginia, and West Virginia Insurance Company of Harrisville, West Virginia, and in respect to that portion of my loss (that is to the extent of said fire insurance coverage) I hereby expressly reserve the right to myself and to said fire insurance companies in my or their own right or through me to proceed against said Standard Oil Company of New Jersey for the collection of said Seven Thousand (7000) Dollars, as the necessities of the case may require or advise. It being fully understood and agreed that the payment of said sum of Six Thousand (6000) Dollars is accepted only as a compromise settlement of any and all claims I have against said Standard Oil Company of New Jersey, its agents and servants, by reason of said fire over and above the said fire insurance coverage of Seven Thousand (7000) Dollars on said premises; that said payment is not in anyway to be constructed as an admission of liability for said fire by the Standard Oil Company of New Jersey, or any of its agents or servants; that nothing herein contained shall operate as in anyway releasing my claim or that of said fire insurance companies for said Seven Thousand (7000) Dollars; and on the contrary all right or rights of action which I now have or my said fire insurance carriers now have or may hereafter have against said Standard Oil Company of New Jersey, on account of said fire are hereby expressly retained and reserved just as if this settlement of my claim of damages over and above said Seven Thousand (7000) Dollars, covered by fire insurance with said fire insurance companies, had not been made.

"I, however, by way of further consideration for said payment of Six Thousand (6000) Dollars agree that I will first use my utmost efforts to collect from my said fire insurance carriers before proceeding against the Standard Oil Company of New Jersey its agents and servants, for the collection of my said remaining claim of Seven Thousand (7000) Dollars.

"I understand and. agree that the right herein reserved shall not so operate or be construed, that the payment made to me as recited herein shall not so operate or be construed, and that nothing herein contained or done in pursuance hereof shall so operate or be construed as an admission of liability on the part of the Standard Oil Company of New Jersey or any of its agents or servants for said fire or any injuries or injurious results, direct or indirect, to persons or property or as an admission of liability on the part of the Standard Oil Company of New Jersey, its agents or servants, for the payment to me or to my said fire insurance carriers or any or either of them or to any person whomsoever of said sum of Seven Thousand (7000) Dollars or any part thereof. I further understand and· agree that there are no agreements or promises not expressed herein.

"Witness my hand and seal this 2nd day of July, 1932.

A. R. HOLBERT (SEAL)."

The defendant says that it is discharged as a result of this agreement on the part of the plaintiff because (1) the plaintiff by agreeing that he would pursue his right of action against the insurance company for the remaining $7,000.00 of his claim before he went against the Standard Oil Company therefor, thereby postpones the obligation of the principal debtor, the contract of insurance after loss being a contract of suretyship in which the wrongdoer is the principal debtor and the insurer the surety; (2) that if the first proposition is not found to be correct that nevertheless payment by the Standard Oil Company operated to reduce *pro tanto* the obligation of the insurance company, and inasmuch as the amount so paid was in excess of the total amount of insurance in the policy sued on, there is a complete discharge.

To this special plea plaintiff replied relying upon the policy

contract between it and the defendant as making the defendant primarily liable for the loss, and stating that, in any event, his agreement with the Standard Oil Company fully preserves and protects the rights of the defendant as to any recovery against that company under its right of subrogation. The trial court sustained the demurrer to the special plea, and, upon the case being called, defendant declined to plead further. Thereupon, the case was submitted to the court in lieu of a jury and upon ascertainment of the amount due, judgment was entered for the plaintiff in the sum of $3,000.00. To that judgment, this writ of error is prosecuted.

As to the first proposition, that is, that plaintiff has postponed the obligation of the principal debtor and thereby released the surety, we believe the answer lies in the fact that under the agreement by the plaintiff with the Standard Oil Company, the question of whether or not there will be any delay rests entirely upon the attitude of the defendant itself. Plaintiff agreed that he would first pursue his remedy as against the defendant, but reserved to himself and to the insurer the right fully to proceed against the Standard Oil Company as to the amount covered by insurance. This stipulation is but an assertion of his legal right which is to proceed as he sees fit, either against the insurance company or against the wrongdoer. Any delay that would be the result of the agreement may be obviated by the defendant if it will settle its liability. It files no plea to the merits when the plaintiff sues, and simply attempts to evade liability by saying that the delay caused by it in defending against the plaintiff's claim, not on the merits but by relying upon a technical release by operation of law, itself has the effect of releasing it entirely. To agree with this contention, it seems to us, would be tantamount to saying that the defendant, by bringing about a delay caused by its own refusal to settle a just claim, could rely upon its own unjustified act as a means of justification. Furthermore, the doctrine that an extension of time to the principal debtor works a release of the surety is subject to the well recognized exception to the effect that such result does not follow where, in the agreement of extension, or by agreement between the debtor and creditor, all of the rights of the surety are fully protected. *Exchange Building, etc.,*

*Co.* v. *Bayless,* 91 Va. 134, 21 S. E. 279. We think the rights of the surety were fully protected here, especially since the very postponement complained of was made to depend upon its own conduct.

Neither can we see how the acceptance of $6,000.00 under such an agreement as was made by the plaintiff could in any way operate to interfere with the defendant's right to be subrogated as against the Standard Oil Company if and when the circumstances are such as to justify the defendant in expecting that to be done. The settlement made was of the amount over and above the total amount of insurance carried by the plaintiff, $7,000.00. It expressly and explicitly protects both the plaintiff and his insurer in their rights against the Standard Oil Company to the extent of the total insurance carried by the plaintiff. In other words, the Standard Oil Company was assuming the risk as to whether the plaintiff could prove more than $7,000.00 damage. It was settling and paying off by compromise whatever amount over and above $7,000.00 the plaintiff is able to prove. That is all the agreement purports to do. Defendant contends that if this agreement stands, the Standard Oil Company when sued can plead the agreement in bar of any recovery by an insurance company as against it after subrogation and that, therefore, since the agreement has the effect of reducing the right of subrogation to the extent of the payment made, the $6,000.00 paid should be applied to reduce *pro tanto* the liability of the insurer. We do not believe that such a construction of the agreement is possible. The Standard Oil Company could not plead the agreement in bar of any liability within the range of the $7,000.00 total insurance. The settlement is expressly confined to the adjusted amount of loss over and above the amount of the insurance. While denying its liability, the effect of the agreement as to the Standard Oil Company is nevertheless to leave open to the plaintiff and to his insurers all rights as against that company, except as to the amount of loss over and above the amount of $7,000.00. This contract, of course, does operate to release the Standard Oil Company from liability for any amount of loss over and above $7,000.00 that may have been sustained by the insured. Under ordinary circumstances, a release of a cause of action will operate

upon the whole of it. If that rule were applied here, then the Standard Oil Company would be fully discharged, the insurer's right to subrogation in the absence of fraud would be destroyed, and recovery by the insured under the policies prevented. We think, however, that the circumstances here fall within a well recognized exception to the rule just stated, because that rule is for the benefit of the contemplated defendant and is not to be applied where such defendant, as here, has expressly consented to the splitting of the cause of action against it. *Atchison, etc., R. Co.* v. *Home Ins. Co.,* 59 Kan. 432, 53 Pac. 459; *Ocean Accident & Guarantee Corpn.* v. *Hooker Electro-Chemical Co.,* 240 N. Y. 37, 147 N. E. 351; 1 R. C. L. 342.

For the reasons stated, we believe that the trial court was correct in sustaining the demurrer to the defendant's special plea and in entering judgment for the plaintiff in the absence of further plea by the defendant. The judgment of the circuit court of Calhoun County will therefore be affirmed.

*Affirmed.*