### FORT WORTH LLOYDS v. TOM E. HAYGOOD ET AL

No. A-3228. Decided January 23, 1952.
Rehearing overruled April 2, 1952.
(246 S. W. 2d Series, 865.)

*Kemper, Wilson & Schmidt* and *Eugene Wilson,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that Fort Worth

Lloyds, the insurance carrier, is legally bound to establish the negligence of the third party tort-feasor, the Sugar Company, as the basis for recoupment of workmen's compensation benefits paid to the injured employee under the circumstances where the injured employee, as plaintiff, and the Sugar Company, as defendant, had agreed between themselves to dispose of his claim and cause of action without the consent of Fort Worth Lloyds, the intervenor. Traders & Gen. Ins. Co. v. West Texas Utilities Co., 140 Texas 57, 165 S. W. 2d 713.

*H. Cecil Baker*, of Richmond, *George Roane,* of Rosenberg, *Helm & Jones* and *Albert P. Jones,* all of Houston, for Tom E. Haygood; *C. L. Dutton,* of Richmond, *Baker, Botts, Andrews & Parish,* of Houston, and *R. E. Keeton,* of Dallas, for Imperial Sugar Company, respondents.

The Court of Civil Appeals correctly held that Haygood and the Imperial Sugar Company had the legal right to enter into the agreement, and did not thereby infringe any right of Fort Worth Lloyds. Independent Eastern Torpedo Co. v. Herrington, 128 Texas 17, 95 S.W. 2d 377.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

On June 21, 1949, respondent, Tom E. Haygood, an employee of S. P. Braud Conveyor Service, was injured while installing in the plant of the Imperial Sugar Company certain machinery which the Conveyor Service had contracted with the Sugar Company to install. Haygood was paid $7139 as compensation for his injuries by petitioner, Fort Worth Lloyds, the compensation carrier of Conveyor Service under the Workmen's Compensation statute. Thereafter, Haygood filed a suit against the Sugar Company, as a third party tort-feasor, and Fort Worth Lloyds intervened and sought recovery of the amount of compensation paid by it to Haygood, and for expenses and attorney's fees. Efforts were made by the Sugar Company to settle this suit with Haygood and Fort Worth Lloyds, but no agreement was reached. Sugar Company and Haygood contend that no settlement was reached because of the illegal and unjust demands made by Fort Worth Lloyds as to the amount of expenses and attorney's fees claimed. On date of trial, Sugar Company and Haygood announced in open court that they had entered into an agreement whereby Haygood, for a consideration of $12500 cash, plus an additional $100 to be paid to Haygood, in the event of an ultimate recovery of a judgment against Sugar Company in the then pending suit in excess of $12500, had assigned "all rights to levy

execution, effect collection, or in any way secure or demand payment for my use and benefit * * * upon or on account of any judgment which may be rendered in my favor against Imperial Sugar Company or any other party on account of said accident." The agreement further provided that it was executed without prejudice to, or effect upon, the subrogation rights of Fort Worth Lloyds in accordance with the Workmen's Compensation Act of the State of Texas, and stated that Haygood would cooperate fully with Fort Worth Lloyds in the prosecution of the pending suit. This agreement was not reduced to writing on that date, but was reduced to writing later and before trial was over. Fort Worth Lloyds took the responsibility of proceeding with the case, and put on proof of the agreement and assignment—which, we construe, to all intents and purposes as being a settlement and release of Sugar Company by Haygood, except for an additional $100 upon a certain contingency. The trial court, finding that plaintiff's attorneys refused to proceed with the trial, entered a judgment dismissing Haygood's suit against Sugar Company for want of prosecutiion, and providing that Fort Worth Lloyds, intervener, take nothing. Upon appeal this judgment was affirmed by the Court of Civil Appeals at Galveston, 238 SW 2d 835.

It is the contention of Fort Worth Lloyds that when it had proven the facts that Haygood and Sugar Company, with full knowledge of its subrogation rights, had settled Haygood's cause of action the Sugar Company for $12500, plus the $100 additional, it was entitled to a judgment against the settling parties for the amount of its compensation payments plus reasonable expenses and attorney's fees. It is the contention of the Sugar Company that Fort Worth Lloyds could not recover without first proving up Haygood's cause of action against the Sugar Company.

We think this case is controlled by previous decisions of this court, among which is Traders & General Ins. Co. v. West Texas Utilities Co., 140 Texas 57, 165 S.W. 2d 713. We cannot find any real difference in the legal principles applied in that case and those controlling this case.

When the Workmen's Compensation statute was originally passed in this state in 1913, it contained no provision requiring an injured employee to make an election between suing for his compensation due him, and filing a common law suit against the third party tort-feasor; nor was there any provision subro-

gating the insurance carrier who had paid compensation to the employee to any rights of the injured employee. Fox v. Dallas Hotel Co., 111 Texas 461, 240 SW 517. However, the Compensation Act in 1917 was amended in its entirety and what is now Section 6a of Article 8307, Vernon's Tex. Ann. Civ. Stats., 1925, was inserted in the Act. That section reads as follows:

"Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employe may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employe or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employe in so far as may be necessary and may enforce in the name of the injured employe or of his legal beneficiaries or in its own name *and for the joint use and benefit of said employe or beneficiaries and the association* the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employe or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employe or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employe or his beneficiaries and the approval of the board, upon a hearing thereof."

Under this it has been held that an injured employee has an option as to which of two persons he will sue, and that he cannot receive compensation if he first prosecutes his suit against the third party tort-feasor, but that after he has received compensation payment he may proceed against the third party tort-feasor, in the event the compensation carrier fails or refuses to so proceed. Texas Employers Ins. Ass'n. v. Brandon, 126 Texas 636, 89 SW 2d 982; Houston Gas & Fuel Co. v. Perry, 127 Texas 102, 91 SW 2d 1052.

The constitutionality of this Section 6a was attacked in Consolidated Underwriters v. Kirby Lumber Co., (Tex. Com. App.,

1924) 267 SW 703. This court approved the holding of the Commission of Appeals on the question discussed. There it was said that under the 1913 Act the employee could recover against the compensation carrier and the third party tort-feasor, and the compensation carrier, although it had paid the full compensation, had no rights of subrogation. "This situation was in reason, imperfect; it served to bring to the employe more than his damages, which was, perhaps, not sound economy, and to make the insurance more burdensome to the insurer and hence more expensive to the employer and ultimately to the public than would have been the case had the amount recovered from the actual tort-feasor been applied *first to the repayment of the amount of compensation,* and then the balance to the employe, to make him whole."

"It was doubtless to remedy these defects and supply this juster and more politic substitute that the particular section (6a) of the amendment that is now under investigation was passed." Ibid, p. 706, 2nd col., emphasis added.

It has been held that there is but one cause of action against the third party tort-feasor. Texas Employers' Insurance Ass'n. v. Texas & P. Ry. Co. et al (Tex. Civ. App.), 129 SW 2d 746, writ dismissed, correct judgment, loc. cit., p. 750, (5); Hartford Accident & Indemnity Co. v. Weeks Drug Store, (Tex. Civ. App.), 161 SW 2d 153, 154 (1-3), error refused, want of merit. Also that no cause of action exists in favor of the injured employee, or his representatives, except as to the damages, if any, suffered in excess of the amount of compensation insurance collected by them. Mitchell v. Dillingham, (Tex. Civ. App.), 22 SW 2d 971, loc. cit., p. 972, writ dismissed, and authorities cited therein. Houston Gas & Fuel Co. v. Perry, supra.

Where suit has been first filed against the third party tort-feasor it has been held that no right of subrogation is given to to the compensation carrier, and therefore, the carrier is not liable to the injured employee, or his representatives, for any amount. Employers' Indemnity Corporation v. Felter et al, (Tex. Com. App.), 277 SW 376.

In Houston Gas & Fuel Co. v. Perry, supra, Mrs. Perry, and as next friend for her minor daughter, sued the Gas Company and Hartford Accident & Indemnity Company for damages on account of the death of her husband and the father of the minor. After allegations of negligence against the Gas

Company, it was alleged that the Indemnity Company had heretofore paid compensation and expenses to plaintiffs, by virtue of being the compensation carrier for Hermann Hospitals Estate, the employer of the deceased D. N. Perry. Indemnity Company was duly served with process, but filed no pleading of any kind whatsoever. Plaintiffs obtained a jury verdict for an amount in excess of the expenses and compensation paid, and the trial court rendered judgment for plaintiffs and also for the Indemnity Company for the amount of expenses and compensation theretofore paid. Upon appeal this judgment was reformed by the Court of Civil Appeals as to an obvious error in calculation, but otherwise affirmed. This court reformed the judgment so as to deduct from plaintiffs' recovery the full amount of compensation and expenses paid by the compensation carrier, plus the amounts for which it was liable to pay in the future. This was in the face of the failure of the Indemnity Company to file any pleadings seeking any relief of any kind or character. The judgment of the lower courts for the Indemnity Company was set aside, and no recovery allowed to the Indemnity Company.

In Hanson v. Ponder, (Tex. Com. App.), 300 SW 35, Hanson, after collecting from his employer's (Summer Sollitt Company) compensation carrier (United States Fidelity & Guaranty Company), filed a suit for his injuries against Ponder as receiver of the San Antonio, Uvalde & Gulf Railway Company, as third party tort-feasor. In this suit United States Fidelity & Guaranty Company intervened and claimed its right to subrogation under Section 6a of Article 8307. Judgment was rendered against the United States Fidelity & Guaranty Company, and it did not appeal. A preemptory instruction against Hanson was given in the trial court, evidently upon the ground that by accepting compensation he had lost his right to sue the third party tort-feasor. This lower court judgment was affirmed by the Court of Civil Appeals. In reversing the judgment of both courts, and remanding the cause for a trial upon its merits, the court said: "In this situation, (upon a retrial upon the merits) if Hanson secures a verdict, the court, in rendering judgment, should deduct from the amount of damages found by the jury the amount of 'compensation paid' ". Loc. cit, 2nd col., p. 40 of 300 SW.

Galveston-Houston Electric Ry. Co. et al v. Reinle, et al, (Tex. Civ. App.) 264 SW 783, writ refused, was a case where the Reinles, after collecting compensation from the carrier of deceased W. S. Reinle's employer, filed a third party tort-feasor

action against the Electric Ry. Co. and others. The compensation carrier refused to join in prosecuting the suit for damages as a co-plaintiff and as such co-plaintiff it was dismissed from the suit. Upon a favorable jury verdict the trial court rendered judgment for the Reinles, less the amount of compensation awarded the plaintiffs. This compensation award was deducted from plaintiff's recovery even though the compensation carrier refused to prosecute, and had been dismissed from the suit as a co-plaintiff. The Court of Civil Appeals reversed and remanded the judgment, holding that W. S. Reinle's parents were necessary parties to the suit otherwise it approved the disposition of the cause. Application for writ of error was refused by this court.

1 We believe the fundamental principle underlying the last three cases cited above is that where compensation has been paid to an injured employee, or his representatives, and they later file suit against the third party tort-feasor, the first money paid or recovered by the employee, or his representatives, belongs to the compensation carrier paying the compensation, and until it is paid in full, the employee, or his representatives, have no rights to any funds; nor have they any cause of action against the tort-feasor. This court has said in so many words in Traders & General Ins. Co. v. West Texas Utilities Co., 140 Texas 57, 165 SW 2d 713: 716:

"* * * It is well settled that unless 'the association recovers a sum greater than that paid * * * by the association to the employee * * * together with a reasonable cost of enforcing such liability' the employee cannot recover, for there is nothing then remaining which is not absorbed by the recoupment by the association of the compensation paid the injured employee, and costs. Hanson v. Ponder, Tex. Com. App., 300 S. W. 35; Texas Employers Ins. Ass'n. v. Brandon, 126 Tex. 636, 89 S. W. 2d 982; Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 91 S. W. 2d 1052; Independent Eastern Torpedo Co. v. Herrington, 128 Tex. 17, 95 S. W. 2d 377; Mitchell v. Dillingham, Tex. Civ. App., 22 S. W. 2d 971, writ dismissed."

*  *  *

"The compromise settlement was made with full knowledge on on the part of the settlers of the association's subrogation rights. While the alleged cause of action against the company belonged to the injured employee he owned it burdened 'by the right of the association to recoup itself for compensation paid * * *' In-

dependent Eastern Torpedo Co. v. Herrington, supra (128 Tex. 17, 95 S. W. 2d 377, 379). It is pointed out in Fidelity Union Casualty Company et al. v. Texas Power & Light Company, Tex. Civ. App., 35 S. W. 2d 782, 783, writ refused, that such 'right of subrogation has existence only in the terms of this statute (sec 6a) and it can be enforced only as therein directed.' It is also stated in the opinion that 'the amount to be recovered' against the third person tort feasor is 'to be appropriated between the parties as directed by the statute,' that is, *that the association first recoup itself out of the amount recovered,* and that the excess only be paid to the injured employee. The money paid over to the employee therefore belonged, under the law, to Traders & General and both the company and the employee were charged with knowledge of that fact and had actual knowledge that Traders & General was asserting its subrogation rights in the cause at the time the settlement was made. *The right of the association to reimbursement out of the first money paid is statutory;* and in event the employee is permitted, without the consent of the association, to settle his claim against the alleged third person tort feasor, thus eliminating his further interest in the suit, the provisision of the statute authorizing the insurance association to *enforce for the joint use and benefit of said employee and the association* the liability of such tort feasor, is thereby nullified. Such transaction between the employee and the association would contravene the legislative purpose, and is unlawful. The money belonging to Traders & General was wrongfully paid by the utilities company to the employee, who wrongfully received it, and both were thereby rendered liable to pay to Traders & General the amount of compensation theretofore paid by it to the employee, together with the costs of enforcement, including a reasonable attorney's fee therefor."

In the case at bar the settlement was made not only with full knowledge of the rights of Fort Worth Lloyds, but also of the Traders & General case and its rule of law. In its findings of fact the trial court states: "17. That on September 27, 1950, (a trial day) Plaintiff Tom E. Haygood, and Defendant, Imperial Sugar Company, had not reduced their agreement to writing * * * because the Defendant's attorney * * * had not determined how to cast the written agreement in order to remove it from the scope of conventional type 'compromise settlement agreement' * * * and not in violation of the decision of the Supreme Court in the case styled 'Traders & General Ins. Co. v. West Texas Utilities Co.,' reported in 165 SW (2d) 713." Therefore, all parties entered into the settlement agreement with full knowledge of the law and the facts applicable thereto.

**2** It is to be remembered that in an appropriate case on an injury being received by an employee covered by the Compensation Act, he is given the option of (1) proceeding against the third party tort-feasor free and untrammeled by any right of subrogation on the part of anyone and with full and free direction and control of his cause, or (2) he may receive compensation from his employer's compensation carrier. By choosing this second remedy, the employee, or his representatives, bring into play the law which subrogates the compensation carrier to the employee's rights against the third party tort-feasor. It is a choice which the employee must make, and no other person, except he can cause the subrogation to come into being, and affect his rights against the third party tort-feasor. He is under no compulsion as to which option he chooses, but he makes his choice voluntarily and freely and with full knowledge of the legal effect of his choice.

Having elected to recover compensation—which he may do merely by showing that he was accidentally injured in the course of his employment—and having no burden to show negligence or to be subject to any other of the common law defenses, there is nothing unjust in giving to the carrier who pays the compensation the right to recoupment under the statute. The first money paid rightfully should go to reimburse the carrier who has paid, or assumed to pay, this compensation to the employee. As to any excess above the amount necessary to make the carrier whole, the statute requires the same to be paid the injured employee, or his representatives, thus insuring for him the full and total amount of his damages suffered by the injury.

**3** Fort Worth Lloyds is entitled to recover from the plaintiff Haygood and the Sugar Company, the amount of compensation paid Haygood "together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case", and the excess in the $12500 (which is greater than compensation paid), shall be paid to Haygood. The trial court found that the amount of compensation paid was $6800 and that the carrier had paid $339 for medical treatment, hospitalization, nursing and drugs, reasonably necessary for the alleviation of the said Tom E. Haygood's condition, or a total of $7139, but failed to find any amount for attorney's fees to be paid Fort Worth Lloyds. The carrier is entitled to recover a reasonable attorney's fee to be fixed by the trial court. Smith et al v. Henger, 148 Texas 456, 226 S.W. 2d 425, 434-435, (26), 20 A.L.R. 2d 853.

It is claimed by respondents, Haygood and Sugar Company, that this result will permit a carrier to take an unreasonable position with regard to compromises and settlements by injured employees, and sustain illegal and unlawful demands by a carrier before it will agree to a settlement. The statute is plain as to what the carrier can lawfully demand from the third party tort-feasor, and in the event the injured employee suffers any damage by virtue of unlawful demands made by a compensation carrier, we think the carrier would be liable to the employee, in a proper case, for such damage. G. A. Stowers Furniture Company v. American Indemnity Company (Tex. Com. App.), 15 S.W. 2d 544.

The judgments of both courts below are hereby reversed and this cause is remanded to the trial court with directions to enter judgment in favor of Fort Worth Lloyds against respondents Tom E. Haygood and Imperial Sugar Company for the sum of $7139, plus a reasonable attorney's fee to be determined by the trial court.

Opinion delivered January 23, 1952.

MR. JUSTICE WILSON, dissenting.

I respectfully dissent for the reason that the majority opinion seems to me to construe incorrectly Sec. 6a of Art. 8307, R.C.S. 1925.

In determining that the employee has no right to settle his portion of the lawsuit (a property right), the majority opinion ignores what ought to be the determining factor, and that is the title and control of the third party action.

Sec. 6a forces a joint venture between two inherently incompatible parties. Unless control of the third party action can be fixed in either the employee or the compensation carrier the relationship is unsatisfactory to both. One Amici Curiae says that "the scheme of the third party action known to Texas Law violates the Biblical command that the ass and the ox should not be yoked together."

Sec. 6a has been referred to as an "inept bit of draftsmanship." Lawlor, *Texas Workmen's Comp. Law*, Sec. 411. Thirty years of confusing results emphasizes this. This legislation could be improved by eliminating the provision for an election

while retaining a recoupment. This would prevent a multiplicity of suits and save expense for both parties.

The carrier's right to any of the recovery against a negligent third party are derived solely from Sec. 6a of Art. 8307. Our Workmen's compensation law was enacted in 1913 without the present Sec. 6a. Sec. 6 of the 1913 Act related primarily to the status of employees of a subcontractor. 16 Gammel's Laws of Texas 433. There was a clause in this section entitling the carrier to "recover indemnity" but this was given a very limited application to subcontractor situations. Aetna Life Ins. Co. v. Otis Elevator Co., Tex. Civ. App., 204 S. W. 376, writ refused. It was generally determined that there was no subrogation independent of the statute. Fox v. Dallas Hotel Co., 111 Texas 461, 240 S. W. 517; Texas & P. Ry. Co. v. Archer, Tex. Civ. App., 203 S. W. 796, no writ history; Lawlor, *Texas Workmen's Comp. Law*, Sec. 411; 38 Harvard Law Review, 971; 46 Yale Law Journal, 695; 35 Minn. Law Review, 684. Presumably to meet this situation, and to prevent two recoveries for the same injury, Consolidated Underwriters v. Kirby Lumber Co., 267 S. W. 703; 12 U. of Chicago Law Review, 231, 238, the Legislature in 1917 enacted Sec. 6a.

The American jurisdictions giving the carrier an interest in a third party negligence action divide roughly into two groups. The first group holds that title to the third party cause of action passes by operation of law to the carrier in what amounts to a trust relationship. The carrier controls the suit and must account to the employee for the excess recovery above its compensation paid less the reasonable cost of recovery. The second group holds that title and control of the suit remain with the employee burdened with what amounts to a lien or charge in favor of the carrier for the amount of compensation paid. Kandelin v. Lee Moor Contracting Co., 37 New Mexico 479, 24 P. 2d 731; 38 Harvard Law Review, 971; 46 Yale Law Journal, 695; 7 Fordham Law Review, 282; 12 U. Chicago Law Review, 231; 35 Minn. Law Review, 684; Schneider, Workmen's Compensation Text, Vol. 3, pp. 180-228.

Since the carrier's right in the third party action are derived solely from Sec. 6a, the problem in Texas becomes one of determining legislative intent. In this, the crucial word is subrogation. Does the doctrine of subrogation automatically assign title to the carrier?

The word *subrogation* is a technical word, originating in surety-debtor-creditor relationships, and having a very perplexing development as it came to be applied outside its original field.[1]

When Sec. 6a was enacted in 1917, the law in Texas, as stated in Faires v. Cockerell, supra, note 1, was that subrogation did not work an assignment. The fact that Faires v. Cockerell was overruled in 1931 by Fox v. Kroeger, supra, note 1, does not change the meaning and construction of the legislative intent in the use of the word.

---

[1] As far as our law is concerned, the word *subrogation* originated in England in Equity. A problem arose when a surety paid a debt and, under the common law, thus extinguished it, leaving nothing to be assigned to support his cause of action against the debtor. To meet this obvious injustice, the doctrine of subrogaion was borrowed from the Civil Law. Originally in England, under subrogation the surety secured all of the rights and remedies of the creditor, but in the eighteenth century, in what came to be called Lord Eldon's doctrine, it was announced that equity would not decree an assignment of an admittedly extinguished cause of action because of the maxim "Equity follows the law," but instead the surety was allowed to "step into the shoes" of the creditor, or to be "substituted" for the creditor. Morgan v. Seymour (1637) 1 Rep. Ch. 64, 1 Chan. Rep. 119, 21 Eng. Rep. 525; Ex Parte Crisp (1744) 1 Atk. 133, 26 Eng. Rep. 87; Gammon v. Stone (1749) I Ves. Sen. 339, 27 Eng. Rep. 1068; Ves. Sen. Supp. 162, 28 Eng. Rep. 488; Woffington v. Sparks (1754), 2 Ves. Sen. 570, 28 Eng. Rep. 363; Robinson v. Wilson, (1814) 2 Madd. 434, 56 Eng. Rep. 395; Copis v. Middleton (1825) Turn. & R. 223; 12 Eng. Ch. 223, 37 Eng. Rep. 1083; Simpkins v. Poulette (1824) 2 Law Journal 81; Robison v. Larkin (1824) 2 Law Journal 81; Burrus v. Cook, 117 Mo. App. 385, 93 S. W. 888. In this manner Equity corrected an injustice while not directly joining issue with the "common law's reluctance to admit that a chose in action may be assigned." Aetna Life Ins. Co. v. Moses, 287 U. S. 530, 77 L. Ed. 477, 53 *Sup. Ct. 231.* In 1856 Lord Eldon's doctrine was repealed in England by statute. Mercantile Law Amendment Act, 1856. 19 and 20 Vict. c. 97. But the ambiguity latent in Lord Eldon's definition of subrogation had already made its way into the American common law and raised one of the most thorny problems in Texas jurisprudence. In 1848 Lord Eldon's doctrine was introduced into Texas jurisprudence in dicta in Close v. Fields, 2 Tex. 232. In 1851 the court held in Holliman v. Rogers, 6 Tex. 91, that payment by a surety extinguished the debt and therefore subrogation was not an assignment. The Supreme Court probably ruled to the contrary in 1853 in Jordan v. Hudson's Ex'ors., 11 Tex. 82. In 1857 (the English statute was enacted in 1856) Lord Eldon's doctrine that subrogation is not an assignment was reversed in Sublett v. McKinney, 19 Tex. 438. In 1882 the then new Commission of Appeals of our Supreme Court pointed out the conflict between Holliman v. Rogers, supra, and Sublett v. McKinney, supra, and elected to follow the Sublett case, but it did not have the authority and made no effort to overrule Holliman v. Rogers. However in 1895 Sublett v. McKinney, supra, was in turn expressly overruled in Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 28 L. R. A. 528, with an express affirmance and return to Holliman v. Rogers. But that is not the end. In 1931 in Fox v. Kroeger, 119 Tex. 511, 35 S. W. 2d 679, 77 A. L. R. 663, Faires v. Cockerell was overruled. See also Hazleton v. Holt, Tex. Civ. App., 285 S. W. 1115, writ dismissed; 10 Texas Law Review, 519.

Has the point under consideration already been decided? Upon considering all the cases construing Sec. 6a, I find a great number of conflicts by implication and confusing dicta [2] which cannot be reconciled, but I believe that the construction advocated in this dissent is in harmony with the holdings in most of the Texas cases.

The second sentence of Sec. 6a does not expressly declare whether title to the cause of action against the third party passes by operation of law or not.

The vital and material incident of title we are concerned

---

[2] It is clear as the majority opinion holds that there is but one cause of action. Texas Employers' Ins. Ass'n. v. Texas & P. Ry. Co., Tex. Civ. App., 129 S.W. 2d 746, writ dism. judg. cor.; Fidelity Union v. Texas P. & L. Co., Tex. Civ. App., 35 S.W. 2d 782, no writ history. Either the employee or the carrier may initiate the suit, Galveston-Houston Electric Ry. Co. v. Reinle, Tex. Civ. App., 264 S.W. 783; Hanson v. Ponder, Tex. Com. App., 300 S.W. 35; Schnick v. Morris, Tex. Civ. App., 24 S.W. 2d 491, writ refused; Epting v. Nees, Tex. Civ. App., 25 S.W. 2d 717, writ refused. But there can be only one suit, Hart v. Traders & General Ins. Co., 144 Tex. 146, 189 S.W. 2d 493. It is not severable, Hartford Acc. Indem. Co. v. Weeks Drug Co., Tex. Civ. App., 161 S.W. 2d 153, writ refused want of merit. However, both owners of this cause of action may assign their property rights in it to each other. Eastern Torpedo Co. v. Herrington, 128 Texas 17, 95 S.W. 2d 377; Epting v. Nees, supra; Snodgrass v. American Surety Co., Tex. Civ. App., 156 S.W. 2d 1004, no writ history; Foster v. Langston, Tex. Civ. App., 170 S.W. 2d 250, no writ history; Otis Elevator Co. v. Allen, 143 Tex. 607, 187 S.W. 2d 657.

In 1922 the Federal Circuit Court of Appeals said that, under the real party in interest rule, Sec. 6a vested the "entire legal title to the cause of action * * * in the association primarily for its own security" and therefore in determining diversity of citizenship the citizenship of the carrier and not the employee controlled, 3 *Moore's Fed. Practice,* 2d ed., Sec. 17.09, p. 1346. However, upon a plea of privilege the residence of the employee and not the carrier is "the residence of plaintiff" even though the carrier be a party plaintiff along with the employee. In a suit filed by the carrier against a negligent railroad in the carrier's home county, the court held that Sec. 6a "transferred" the cause of action but that venue did not "follow the chose in action" because "the transfer of this cause of action did not create greater remedies than those possessed by the original owners." Commercial Standard Ins. Co. v. Texas & N.O. Ry. Co., Tex. Civ. App., 198 S.W. 2d 913.

There is a line of cases which hold that both owners of this cause of action are not required to be parties to a suit to enforce it. Mitchell v. Dillingham, Tev. Civ. App., 22 S.W. 971, no writ history; Wm. Cameron & Co. v. Gamble, Tex. Civ. App., 216 S.W. 459, no writ history. But a judgment in a suit brought by the employee alone will bar a separate suit by the carrier. Texas Employers' Ins. Ass'n. v. Brandon, 126 Tex. 636, 89 S.W. 2d 982; Employers' Indemnity Corp. v. Felter, Tex. Com. App., 277 S.W. 376; Hart v. Traders & General Ins. Co., supra. Where the carrier does not join in the suit, the employee may not recover for the carrier, even though the carrier be made a party defendant and its right acknowledged in the pleadings of the employee, Mitchell v. Dillingham,

with here is control of the suit. The statute uses the word *subrogation* and then immediately afterward expressly gives the carrier a *permissive* right to control the suit if it chooses to do so by declaring that the carrier "may enforce in the name of the injured employe or in its own name for the joint use and benefit of said employe and the association the liability of said other person." Hanson v. Ponder, supra; Schnick v. Morris, supra. If the Legislature had considered that control passed by virtue of subrogation, it would not have added the permissive clause. This is consistent with the definition of subrogation in Faires v. Cockerell, supra, which at the time of enactment of Sec. 6a had not been overruled. If title, and with it control, had already passed, the permissive clause would be redundant. From this, I conclude that the Legislature did not intend for control to pass under the word *subrogation*. Hence, under the word *subrogation* itself, the title to the cause of action and the right to control the case remains with the employee.

---

supra; Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 91 S.W. 2d 1052. This case would seem to hold by implication that the title to the cause of action had passed by operation of law to the carrier. But there is a line of cases which reaches an apparently contrary result and seem to hold that the title to the cause of action is in the employee. Graves v. Poe, Tex. Civ. App., 118 S. W. 2d 969, writ dismissed; Younger Bros. v. Moore, Tex. Civ. App., 135 S. W. 2d 780, writ dismissed, judg. cor.; Snodgrass v. American Surety Co., supra.

There are a number of cases containing statements that the cause of action "belongs to the employee" burdened by the right of the carrier to recoup itself, Eastern Torpedo Co. v. Herrington, supra; Traders & General Ins. Co. v. West Texas Utilities, supra; Myers v. Thomas, 143 Tex. 502, 186 S. W. 2d 811, 16 Tex. Law Review, 437.

In Schnick v. Morris, supra, it is stated that the cause of action is "jointly owned" by both the carrier and the employee.

The first sentence of Sec. 6a has been construed in a series of cases culminating in the recent case of Fort Worth Lloyds v. Essley, Tex. Civ. App., 235 S. W. 2d 700, writ refused, holding that the mere filing of a suit constitutes an election "to proceed at law." Although it is not usually necessary to supply a statute with a rationale, these cases have done so, and all place their construction upon the impairment by the employee of the carrier's right of subrogation. Thus where a widow of a deceased employee prosecuted a suit against a third party to a final take-nothing judgment in ignorance of her compensation rights, it was held nevertheless that she had made a binding election which was a bar to her compensation case because she had impaired the carrier's right of subrogation. Employers' Indemnity Co. v. Felter, supra. There could have been no actual impairment of the subrogation in the Felter case unless that term included the right to control the trial of the suit. The Felter case indicates that the court thought then that title and control passed to the carrier. See also, Ocean Accident & Guarantee Corp. v. Cooper, Tex. Civ. App., 294 S.W. 248, writ refused. But all of this is dicta in these election cases as their result can be rested on the wording of the statute itself without a rationale.

The statute goes further than the word *subrogation* and states that the carrier may take over the control of the suit. When the carrier does so, it acts as a sort of "trustee." Schnick v. Morris, supra. The statute does not state the circumstances under which the carrier may take over the control, and I find no cases discussing this point.

We should hold that under Sec. 6a title and with it control of the cause of action remains with the employee and that the employee's election to take Workmen's Compenastion does not operate as an assignment in law of the title to the third party action. Because title and control remain with the employee, the carrier has the equivalent of a lien upon the first money recovered to recoup it for compensation paid. The employee should be able to settle tentatively with the third party his portion of the cause of action. This settlement should be interlocutory in the trial court and become final upon being incorporated in the final judgment. As between the employee and the carrier, the employee still would have the duty of prosecuting the suit to final judgment. If the recovery against the third party should be in excess of the compensation paid, the carrier would be entitled to recoupment and that portion of the verdict of fact finding exceeding compensation paid would be governed by the settlement. If the case be lost or the verdict be less than the compensation paid, the carrier would be entitled to recoupment from the money tendered in the settlement.

The carrier argues that this construction would leave it but the shell of a lawsuit. This is not true. The jury need not know the true status of the parties, Myers v. Thomas, supra; Johnson v. Willoughby, Tex. Civ. App., 183 S. W. 2d 201, affirmed in part in Otis Elevator Co. v. Allen, 143 Texas 607, in 187 S. W. 2d 657. The same witnesses are available.

The carrier argues that the employee as a witness would not be as effective after the settlement as before. We are required to presume that he will tell the truth in both situations. Besides, under this construction of Sec. 6a, his incentive to win the case remains the same as before settlement.

This construction of Sec. 6a is not in conflict with Traders & General Ins. Co. v. West Texas Utilities Co., supra, but is in harmony with its results. In that case the employee dismissed the third party action and thus destroyed the carrier's right of subrogation which would be protected under this construction

of Sec. 6a. In that case the carrier did not take over the control of the case. In the case of Hanson v. Ponder, supra, a landmark case because in it this court for the first time recognized the employee's right to bring the suit without the carrier, the court, after quoting Sec. 6a, said:

"The language just mentioned imports a continuing right in the compensated employee as against persons other than the employer, and the words giving the insurer the right to bring suit are permissive in form."

Sec. 6a does not expressly prohibit or restrict the employee's right to compromise his part of the suit, and there is no policy of the law prohibiting such settlements. Holbert v. Safe Ins. Co., 114 W. Va., 221, 171 S. E. 422; Brown v. Vermont Mutual Fire Ins. Co., 83 Vt. 161, 74 A. 1061; Connecticut Fire Ins. Co. v. Erie Ry Co., 73 N. Y. 399, 29 Am. Rep. 171. The majority opinion runs contrary to the general policy of the law favoring the settlement of litigation. The last sentence of Sec. 6a provides that the carrier "shall not have the right to adjust or compromise such liability against such third person without notice to the injured employe or his beneficiaries and the approval of the board, upon hearing thereof." We are not called upon to determine the meaning of this sentence in the case at bar but it does show that the Legislature contemplated at least one type of compromise and placed some restrictions upon the carrier's right to compromise. The reverse of the very situation at bar—a settlement by the carrier of its portion of the cause of action, leaving the employee to carry on the suit for the excess—was early approved by an appellate court. Lancaster v. Hunter, Tex. Civ. App., 217 S. W. 765, no writ history.

My construction of Sec. 6a approximates, within the language of the statute, what should be the policy of the law. In The Aetna, 138 F. 2d 37, a subrogation suit arising under the Harbor Workers' Compensation Act the court said:

"Prior to the amendment of the Compensation Act (Federal Harbor Workers) in 1938, any acceptance of the compensation by an injured employee forthwith worked an assignment to the employer of the employee's right of action against third persons for his injury. This was in aid of the employer and not a limitation upon his right to subrogation. The reason for the assignment which the law thus afforded is apparent. An injured employee, especially once he has received compensation, may have neither the incentive nor the desire to press his right of

action against third persons responsible for his injury. Hence, the law passed to the employer the control of the employee's right of action against third persons once the employee accepted compensation. But the possible harm from an assignment so summarily and so informally acquired became manifest. An injured employee, out of the exigencies of his non-productive situation might find it necessary to accept compensation at once without thought for his right of action against others. Yet, therewith his control of his right of action against third persons passed automatically to the employer whose interest in pressing the employee's claim or in pressing it for more than enough to satisfy the employer's requirements, as measured by the extent to which he voluntarily acknowledged liability for compensation might not be great."

Applying then my construction of Sec. 6a to the present situation I find that at the beginning of settlement negotiations the carrier insisted on $9,873.11, whereas the maximum amount of the compensation paid was $7,139.00, the difference being $2,734.11. This difference was itemized in their pleadings as:

(a) $99.11 for investigation expense of the original workmen's compensation claim,

(b) $235.00 attorney's fees in defending the original workmen's compensation claim,

(c) $2400.00 attorney's fees incurred in the prosecution of the present suit.

The employee and third party thought that the demands of the carrier were excessive in amount and arbitrary. Otherwise the entire case might have been settled. Since the parties were unable to agree on a settlement of the entire case, the employee and the third party, recognizing the risks involved in the outcome of a suit for damages, agreed upon an amount which would insure a recovery by the employee and at the same time protect the third party from liability in excess of the amount agreed upon. Why should they not have that right?

The case of G. A. Stowers Furniture Co. v. American Indemnity Co., 15 S. W. 2d 544, affords the employee little comfort. In that situation the insured blames his own insurance company for not compromising within the policy limits and allowing a case to go to a final judgment in excess of the policy limits. Here the injured employee is prevented by the carrier from compromising his portion of the cause of action exceeding the

subrogation claim. Suppose the third party action goes to a take-nothing judgment. Is the employee to have another cause of action against the carrier for the amount he would have received by compromise? Under the Stowers case he must prove negligence. This is a very unsatisfactory remedy to give the employee in exchange for taking away the right to control his own property.

I cannot reconcile the statement in the majority opinion that there is but one cause of action with another statement from it that "the first money paid or recovered by the employee, or his representatives, belongs to the compensation carrier paying the compensation, and until it is paid in full, the employee, or his representatives, have no rights to any funds; nor have they any cause of action against the tort-feasor." If from the happening of the accident the employee starts with a cause of action against the third party, and if upon electing to take compensation he no longer has a cause of action until the carrier be recouped (as the majority hold), then necessarily the title to the cause of action passes by operation of law to the carriers. If this in effect be the holding of the majority, it should follow that the employee loses and the carrier gains control of the third party action. In this latter event, there is all the more reason for allowing the employee to settle, and none against it. I feel that the legislative intent was the exact opposite and that Sec. 6a should be construed as not effecting an automatic assignment of the title to the third party action to the carrier.

Perhaps the most fundamental flaw in the majority opinion and in some of the cases upon which it relies is that it fails to view this problem as one involving a division of the damages which flow from an indivisible cause of action, rather than of dividing the cause of action itself, which, because of the very nature of a negligence action, cannot be done.

The effect of the majority opinion is to create a windfall for the Sugar Company in that it allows the Sugar Company to settle with both plaintiffs for the same sum it expected to be the cost of settling with only one. Under my view of the case the judgment of the trial court should be reversed and the cause remanded for trial.

Opinion delivered January 23, 1952.

Motion for rehearing overruled April 2, 1952.