**DEACE v. STRIBLING.**
No. 4214.

Court of Civil Appeals of Texas. El Paso.
June 18, 1942.

Robert Eckhardt, of Austin, for appellant.

Bill S. Watkins and A. G. Mueller both of Llano (Ike D. White and White, Taylor & Chandler, all of Austin, of counsel), for appellee.

PRICE, Chief Justice.

This is an appeal by R. A. Deace from the judgment of the District Court of Llano County. W. F. Stribling sued R. A. Deace and another seeking to cancel a certain mineral lease on land in Llano County. Appellee Stribling, on March 27, 1935, executed a mineral lease to appellant Deace and others, including all minerals, other than oil and gas, on or under a certain tract of land in Llano County. The basis of the suit to cancel was for alleged noncompliance by appellant with the conditions thereof. Appellant answered, pleading, among other things, a cross-action. The trial was before the court and jury, with submission on special issues, and on the verdict returned judgment was rendered in favor of appellee canceling the lease and against appellant on his cross-action.

It is unnecessary to further summarize the pleadings, as there is no point made relative thereto.

The subject matter of this suit has been before the Austin Court of Civil Appeals. Appellee sued appellant and others in the

518

District Court of Llano County seeking the same relief sought here on practically the same grounds urged in this suit. The trial resulted in a judgment in favor of Stribling for the cancellation of the lease. Deace appealed, and the Austin Court of Civil Appeals reversed the judgment and ordered the case dismissed. Subsequently, on the 15th day of April, 1941, appellee filed this suit. The former case on appeal is Deace v. Stribling, Tex.Civ.App., 142 S. W.2d 564, 565. In the opinion written for the court by Judge Blair, there is set forth verbatim the vital portions of the lease here involved. However, even at the expence of prolonging this opinion, we think it necessary to here set same forth. We shall copy from that opinion the material portions of the lease:

"First. 'That said parties of the first part * * * Do, by these presents, lease, let and demise unto the said parties of the second part for the purpose of prospecting for, mining, removing and marketing, all minerals and metals and non-metalic minerals of every kind except gas and oil; just as long as paying ores can be found on or under the following described tract or parcel of land, to-wit:'

   *     *     *     *     *     *

"Second. 'The terms of this lease and the estate herein granted shall begin on this date and continue until same is terminated under the provisions hereof:'

"Third. 'It is agreed by the parties hereto that said parties of the second part shall have three months time from this date, and shall have full rights of ingress and egress, at all times for himself, his representatives, partners and employees upon all of the said premises; for the purpose of prospecting for, locating and selecting locations for opening and working mines and taking therefrom any minerals, metals, or non-metalic minerals excepting gas and oil for the purpose of marketing same, and also for making assay tests on same.'

"Fourth. 'The parties of the second part herein agree, in case minerals or metals are found on said leased premises, within the above named period, in sufficient quantities and richness so that same can be mined at a profit; to within six months from said months period above named, to open up such mine shafts, open out quarries, etc., as may be necessary to exploit and develop any ore veins or ore deposits on said premises, of said minerals or metals thereon and to place on said premises, such machinery, tools and appliances, as the character of the ore, in the opinion of the said second parties, may warrant, and to work said mines on said premises except from delays caused by unfavorable weather, accidents, disastrous explosions, strikes, fires or other causes beyond the control of parties of the second part.'

"Fifth. 'Upon the wilful failure of the parties of the second part to fulfil or comply with any, or all, of the conditions and stipulations hereby imposed upon them or the terms thereof, then 30 days after written notice of such willful breach on the part of the parties of the second part, having been given them by parties of the first part; then if said willful breach continues the tenure of this lease shall, at the option of said parties of the first part, expire and terminate.' "

The last paragraph of that opinion is as follows: "Having held that the lease contract could be terminated or forfeited only for a wilful failure on the part of appellant to fulfil or comply with any or all of the conditions stipulated, after thirty days' written notice of such wilful breach or failure, which thirty days had not expired when this suit was filed, the judgment of the trial court must be reversed and the cause dismissed, without prejudice, however, to the right of appellee to give the written notice required by the lease contract, and to proceed to terminate or forfeit the lease contract if the breach or failure of appellant to comply continues after the expiration of the thirty days' written notice period."

On the present trial appellant Deace testified that he went on the premises in May, 1935; that he immediately laid off the shaft upon which he was now working; that the shaft was now 33 feet deep; that he started to work on the shaft in May, 1935, and now (May, 1941) it was 33 feet deep; that he had done much prospecting on the property, and had generally prospected the entire property; he thought during 1935 he had sunk the shaft 10 or 12 feet deep; in 1936 did very little work thereon, went perhaps 2 or 3 feet; in 1937 went about 2 feet in the shaft; in 1938 about 2 feet; did not do anything in 1939 because he was under injunction; did not do anything on it in 1940; in 1941 went down about 16 feet; no minerals had been produced on

the lease; he built a furnace or smelter with fire brick and fire clay with a receptacle to contain a crucible; built that in February or March, 1941; he had tried to operate same, but did not get any results. There was evidence that he had placed a windlass or derrick on the property; that the land involved consists of about 1700 acres, including a part of Pack Saddle Mountain. There is no evidence that minerals as contemplated in the lease are in or upon the land of quality or quantity as would render their mining profitable.

On the 13th day of October, 1938, appellee brought the suit which was finally disposed of by the judgment of the Austin Court of Civil Appeals on July 14, 1940.

This case was submitted to the jury on three special issues which, with the findings of the jury thereon, were as follows:

No. 1: "Do you find from a preponderance of the evidence that the defendants wilfully failed to fulfill or comply with any of the conditions and stipulations imposed upon them by the contract involved herein or the terms thereof?"

Answer: "Yes."

No. 2: "From a preponderance of the evidence do you find that the plaintiff notified the defendants in writing 30 days before the institution of this suit, to-wit, 30 days before the 15th day of April, 1942, of such breach, if any there was?"

Answer: "Yes."

No. 3: "Do you find from a preponderance of the evidence that such wilful breach, if any you have found, continued after the expiration of 30 days from the date of delivery of such notice?"

Answer: "Yes."

To Special Issue No. 1 appellant objected as follows: "In submitting Special Issue No. 1 the court erred ·in failing to limit the said time for the prospecting or working the said leased premises to the period after July 24, 1940, the date of the final dismissal of the former suit. The former suit is res judicata to occurrences prior to filing of same and plaintiff is estopped by the said judgment to introduce matters which occurred during the pendency of said suit. Furthermore, the court was in error in allowing the jury to consider whether or not a breach occurred after judgment in said prior suit and until July 24, 1940, the date of the reversal of the said suit, in that, as a matter of law, defendant

Deace and any one holding under Deace was· under no duty to perform any of the stipulations, covenants or conditions of the contract after this Honorable Court in the first suit had rendered its judgment that such lease contract had terminated. As a matter of fact, Deace, or his associates, were under no duty to continue to perform after a suit was filed."

This objection is shown by bill of exceptions made up by the court after the trial had concluded. The bill fails to show that counsel excepted to the failure of the court to sustain his objections to the charge. The court in preparing the bill adopted the language of a bill tendered by appellant, but would not allow certain other matters sought to be presented by the bill on the ground that same were not correct.

The objection as made, aside from the failure of appellant to except to the refusal of the court to sustain same, though somewhat confusing, we think was sufficient to call the court's attention to the fact that the issue included the entire time from the formation of the contract to the date of the trial.

■ In a general sense, it is true that, in case of a lease on condition, if the lessor institutes unfounded litigation seeking to cancel same for breach of conditions, a failure of the lessee during the pendency of such litigation to comply with same is not ground for cancellation. Miller v. Hodges, Tex.Com.App., 260 S.W. 168; Jones v. Gibbs, 133 Tex. 645, 130 S.W.2d 274.

■ In construing this lease we shall adopt the construction placed thereon by the Austin Court of Civil Appeals. The condition of forfeiture in the lease here involved is somewhat peculiar. Here there must be not only a wilful failure to observe the conditions of the lease, but such wilful failure must continue for thirty days after written notice thereof by the lessor.

A wilful failure would be immaterial if within thirty days after written notice thereof the lessee resumed in good faith a compliance with the terms of the lease. Likewise, we think a wilful failure would be immaterial if before written notice lessee had abandoned such default and was observing the conditions of the lease on the date of the service of the notice. This last sentence is not necessarily the construction of the Austin Court; but we think is inferable therefrom.

We think a fair construction of the findings of the jury as a whole is, that there was a wilful failure to observe the conditions of the lease; that such failure existed on the date the notice was served, and it persisted for more than thirty days thereafter. The date of the commencement of such breach was immaterial. Its existence on the date of the serving of the notice and failure to comply within thirty days from the service thereof was a justification for cancellation for breach of conditions.

Aside from an intentional abandonment of the entire property, which would not require notice, this was the only condition upon which the lease could be canceled by the lessor. It was immaterial when the breach occurred, providing that the breach did occur and was subsisting on the date the notice was served and continued to subsist for more than thirty days thereafter. This issue we believe the court's charge as a whole fairly presented. We hold that the form of Issue No. 1 in the matter complained of in no way harmed the appellant.

That portion of appellant's statement as to the court having refused certain special issues does not seem to be borne out by the transcript. The transcript does not show these charges were either requested or refused.

Counsel for appellee, after reading the lease to the jury, argued to them that the contract as a whole clearly meant to a layman or anyone else that it was the intention of the parties that defendant Deace should not only diligently prospect for ore, but diligently develop the property, and that this provision of the lease contract had not been carried out and the property had not been developed.

Appellant objected to this argument and requested the court to charge the jury that they were not to consider the question of whether or not minerals were found in paying quantities, and should consider only the question of whether or not defendants had acted diligently in prospecting for minerals on the leased premises.

In our opinion this was legitimate argument, and there was no error in the action of the trial court.

Looking at this lease contract as a whole, it made the manifest intention of appellee to grant the lease to the end that he might profit to the extent of eight per cent of the net on any minerals discovered, mined and sold. There was no perfect obligation on the part of appellant to do anything. His performance was optional.

It seems not unreasonable that a burden of reasonable diligence be placed upon appellant to achieve production on the property as a condition to the maintenance of his rights and priviliges under the lease. For a long time this lease has incumbered the title of appellee's property. Not one cent has been realized therefrom. After the expiration of six years no mineral has been discovered, and there seems to be no reasonable prospect of any being discovered. Appellant has had four uninterrupted years. The net result—one hole about 33 feet in depth, another some 10 or 12 feet deep. The 33-foot hole seems to have been a matter of development rather than prospecting. However, it may have both features.

Paragraph No. 1 of this lease has, in our opinion, a provision that the term of the lease is for "just so long as paying ores can be found on or under the following described tract or parcel of land."

After six years appellant has not been able to find paying ores on the land. There is no evidence that there is any prospect of finding any on the land.

Considering this case as a whole, we think the evidence at least raised the issue that appellant had failed in the performance of conditions subsequent, which justified appellee in canceling the lease. This issue was submitted to the jury and found against appellant. It is, we think, binding upon him.

It is ordered that the judgment be in all things affirmed.