Al ELLIS, Appellant,

v.

CITY OF DALLAS, Appellee.

No. 11–02–00134–CV.

Court of Appeals of Texas,
Eastland.

Feb. 6, 2003.

Arlen D. 'Spider' Bynum, Michael Russell, Elizabeth A. Florence, Vickie Brandt, Howie & Sweeney, L.L.P., Dallas, for appellant.

Julie Essenburg, Dallas City Attorney's Office, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

TERRY McCALL, Justice.

The City of Dallas sued Al Ellis for conversion of money owed to the City for a workers' compensation lien. The trial court entered judgment on the jury verdict, awarding the City $40,857.59 [1] for the conversion. The trial court also awarded prejudgment and postjudgment interest. Both parties appeal. We affirm.

### Issues Presented

In his brief, Ellis presents four issues. In the first and second issues, he contends that the jury's findings are against the overwhelming weight of the evidence and that the evidence is legally and factually insufficient to support the findings. In the third issue, Ellis argues that the trial court erred by awarding prejudgment interest for the time period prior to the filing of the petition in this cause. Ellis asserts in his fourth issue that the judgment fails to conform to the law of the case.

The City presents two issues. In the first issue, the City contends that the trial court erred in refusing to award the additional sum of $20,428.95 because Ellis forfeited his right to attorney's fees as a matter of law when he converted the City's money. Under this issue, the City contends that the trial court erred by refusing to so instruct the jury and by denying the City's request for additional post-verdict findings. In its second issue, the City argues that the trial court erred in refusing to award prejudgment interest for the entire prejudgment period, beginning 180 days after the conversion.

The jury was asked to answer only two questions in this case. Question No. 1 inquired whether the City agreed to accept the sum of two-thirds of $40,669.33 as a complete settlement of its workers' compensation lien. The jury answered, "No." Then, Question No. 2 asked:

> What sum of money, if any, if paid now in cash, should be awarded to the City of Dallas for conversion of monies owed it pursuant to its worker's compensation lien?
>
> Do not include interest on any amount of damages you find.
>
> You are instructed that conversion consists of the exercise of dominion and control over property inconsistent with, and in denial of, the true owner or the party having the right of possession.

The jury answered $40,857.89.

### Legal and Factual Sufficiency Standards

■ In order to address Ellis's first two issues, we will apply the following standards of review. Ellis had the burden of proof on Question No. 1. Consequently, to successfully challenge the legal sufficiency of the evidence, Ellis must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Dow Chemical Company v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *Landon v. S & H Marketing Group, Inc.*, 82 S.W.3d 666, 674–75 (Tex.App.-Eastland 2002, no pet'n). We will review the entire record in order to determine whether Ellis established as a matter of law that the City agreed to accept $27,112.89 as a com-

---

1. We note that the jury actually awarded $40,857.8 9.

plete settlement of its lien. See *Dow Chemical Company v. Francis, supra; Landon v. S & H Marketing Group, Inc., supra.*

The City had the burden of proof on Question No. 2. Consequently, to address Ellis's legal sufficiency/no-evidence challenge, we must consider only the evidence and inferences that tend to support the finding, disregarding any evidence or inferences to the contrary. *Southwest Key Program, Inc. v. Gil–Perez,* 81 S.W.3d 269, 274 (Tex.2002); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); see *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. den'd,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). We may sustain a no-evidence challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the only evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharmaceuticals, Inc. v. Havner, supra* at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L. REV. 361, 362–63 (1960)). If there is any evidence of probative force to support the finding, we must overrule the no-evidence point. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.,* 793 S.W.2d 660, 666 (Tex.1990); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

In reviewing the factual sufficiency challenges to the jury's findings, we must consider all of the evidence and determine whether the evidence in support of the findings is so weak as to be clearly wrong and unjust or whether the findings are so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chemical Company v. Francis, supra* at 242; *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar, supra; Landon v. S & H Marketing Group, Inc., supra* at 675; *Casino Magic Corp. v. King,* 43 S.W.3d 14, 19 (Tex.App.-Dallas 2001, pet'n den'd).

### Evidence

The record shows that the City was a self-insured subscriber to the Texas workers' compensation laws when Gregory Ford was injured in an automobile accident while in the course and scope of his employment as a firefighter for the City of Dallas. Ellis, an attorney, successfully represented Ford in his workers' compensation claim against the City and in his lawsuit against the third-party tortfeasors. Ford and the third-party tortfeasors reached a settlement in which Ford was to receive over $400,000.00. The initial check, in the amount of $150,000.00, was made payable to Ford and Ellis. The settlement agreement provided for Ellis to resolve the City's subrogation interest for workers' compensation benefits paid to Ford. Ellis testified that he had been informed by the workers' compensation administrator that the City's lien was at least $58,000.00. Ellis was familiar with the workers' compensation laws in effect at that time [2] and knew that the City had the

---

**2.** See former TEX.REV.CIV.STAT. art. 8307, § 6a (Act of May 17, 1985, 69th Leg., R.S., ch. 326, § 1, 1985 Tex. Gen. Laws 1387, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, 1989 Tex. Gen. Laws 114), now TEX. LABOR CODE ANN. § 417.001–.003 (Vernon 1996 & Supp.2003). Former Article 8307, section 6a applies to this case because it was in effect at the time of Ford's injury. See *Second Injury Fund of the State of Texas v. Avon,* 985 S.W.2d 93, 95 (Tex.App.-Eastland 1998, pet'n den'd); *Harris v. Varo, Inc.,* 814

right to recover, to the extent of the workers' compensation payments it had made to or on behalf of Ford, the "first money" from Ford's settlement with the third parties. The City, however, did not receive its money.

Ellis and the City disagreed about the amount of money owed to the City. Although Ellis and the City ultimately concurred that the City's legitimate workers' compensation lien was $61,286.84, Ellis testified that he and the City's claims manager, James Alderson, had reached an agreement to settle for less money. Ellis testified that Alderson had agreed to accept two-thirds of the amount of workers' compensation payments documented to Ellis and to pay Ellis the other one-third for his attorney's fees. Ellis testified that the City had only documented $40,669.33.

Alderson testified that he agreed to pay Ellis attorney's fees of one-third of the amount of the City's lien, but Alderson denied having made any agreement to settle for less than two-thirds of $61,286.84. Alderson testified that he never settled the City's workers' compensation liens for less than 100 percent (minus up to one-third for attorney's fees) because the funding for the City's workers' compensation payments came from tax dollars. Alderson was responsible for recovering as much of that money as possible in order to keep the tax base for the residents of Dallas at the lowest level possible.

The documentary evidence that was introduced included correspondence between Ellis and Alderson. On October 2, 1989, Ellis wrote to confirm that Alderson agreed to provide him with a complete list of bills paid by the City for Ford's injuries. Ellis noted that a tentative settlement had been reached in the underlying lawsuit.

In a letter dated October 9, 1989, Alderson stated that the total amount paid by the City was $70,809.29. According to his letter, Alderson attached a copy of "all checks issued for both indemnity and medical payments." Alderson also requested that Ellis advise him if any further documentation was needed. In a letter dated October 16, 1989, Ellis wrote that the attachments to Alderson's letter only verified payments of $40,669.33. Ellis concluded this letter by stating, "If you have any other documents to verify the City's worker's compensation subrogation interest, I would be happy to consider them." However, on October 19, Ford entered into the settlement agreement with the third parties. On that same date, Ellis issued a check to the City for $27,112.89 (two-thirds of $40,669.33) as full payment of its workers' compensation lien. On October 27, Alderson returned the check and restated the City's position that it was entitled to $70,809.29 less one-third for attorney's fees. In a letter dated November 2, 1989, Ellis acknowledged that the City had sent documentation with its October 27 letter verifying that the City's legitimate subrogation interest was $61,286.84. Ellis also stated his opinion that they had reached an oral agreement based upon the previously verified amount of $40,669.33, but he proposed that they "split the difference" between the two figures. On November 10, 1989, Alderson responded with a letter concurring that the City's subrogation interest was $61,286.84. Alderson also stated that the City had agreed to pay attorney's fees of one-third of that amount. Ellis responded on November 14, again proposing that they "split the difference" because Ellis and Ford had been "operating under the assumption that the City's

S.W.2d 520, 523 (Tex.App.-Dallas 1991, no writ). Former Article 8307, section 6a as it read in 1987 when Ford was injured is quoted in relevant part by *Autry v. Dearman,* 933 S.W.2d 182, 187 (Tex.App.-Houston [14th Dist.] 1996, no writ).

subrogation interest was no more than $58,000." On November 17, Alderson wrote to Ellis and again stated the City's position that it was entitled to $61,286.84 less one-third for attorney's fees. Alderson requested that Ellis remit a check for that amount to the City. In the final correspondence between Ellis and Alderson, dated December 1, 1989, Ellis rejected Alderson's "offer of settlement" and invited Alderson to "take whatever steps you feel are necessary to protect the alleged subrogation interest of the City of Dallas."

We hold that the evidence is both legally and factually sufficient to support the jury's findings. As to Question No. 1, Ellis did not conclusively show that the City agreed to accept a lesser sum than was legitimately owed to it pursuant to statute, nor was the jury's answer against the great weight and preponderance of the evidence. Furthermore, sufficient evidence was introduced to support Question No. 2. Ellis was aware of the City's statutory right to subrogation and of its right to receive the "first money" from Ford's settlement. See *Fort Worth Lloyds v. Haygood,* 151 Tex. 149, 246 S.W.2d 865, 869 (1952); *Prewitt and Sampson v. City of Dallas,* 713 S.W.2d 720, 722 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). Shortly after Ford's settlement with the third parties, Ellis acknowledged that the amount of the workers' compensation lien was $61,286.84, but he refused to give the City the amount owed pursuant to that lien. Ellis had the money in his possession. He took out one-third of the $61,286.84 as his share for attorney's fees and kept the remaining two-thirds ($40,857.89) in his trust account. Several months later he disbursed the money when Ford requested that he do so. Ellis disbursed two-thirds of the City's money to Ford and kept another one-third for himself. So, Ellis actually received one-third of the $61,286.84 plus another one-third of the

City's $40,857.89, for a total of $34,048.24. The evidence was legally and factually sufficient to show that Ellis converted the $40,857.89 which belonged to the City pursuant to its workers' compensation lien. See *Prewitt and Sampson v. City of Dallas, supra.* Ellis's first and second issues are overruled.

### Law of the Case

■ In his fourth issue, Ellis contends that the judgment failed to conform to the law of the case as set out in *City of Dallas v. King,* No. 05–96–01457–CV, 1998 WL 337863 (Tex.App.-Dallas June 26, 1998, pet'n den'd) (not designated for publication). We disagree. The City originally sued Ford, Ellis, the third-party tortfeasors, and the tortfeasors' insurance company for conversion. The appeal to the Dallas Court of Appeals, however, involved only the third-party tortfeasors and their insurance company. In that appeal, the court held that the tortfeasors and their insurance company did not convert the City's money because the City's lien attached at the time of disbursement of the settlement check to Ford and Ellis, not while the money was still in the possession of the tortfeasors or their insurance company. The Dallas Court of Appeals noted, "Any claim for conversion at that point in time would involve property controlled by Ford's attorney [Ellis], not by appellees." *City of Dallas v. King, supra.* We hold that the law of the case did not mandate a different result in the judgment below. Ellis's fourth issue is overruled.

### Forfeiture of Attorney's Fees

■ In its first issue, the City contends that the trial court erred in refusing to award the City an additional $20,428.95 (the amount of attorney's fees recovered by Ellis on the City's workers' compensation lien) because, as a matter of law, Ellis

forfeited his right to attorney's fees by converting the City's money. Under this issue, the City complains of the trial court's refusal of a requested jury instruction and of its denial of a request for additional findings. The City relies upon *Prewitt and Sampson v. City of Dallas, supra.* In *Prewitt and Sampson,* the court upheld a summary judgment in favor of the City and concluded as a matter of law that attorney Prewitt converted the City's money. Prewitt recovered a judgment for her client from a third-party tortfeasor; failed to notify the City, who (like in the present case) was a self-insured subscriber with a statutory workers' compensation subrogation interest, of the settlement; and refused to tender payment to the City. In that case, Prewitt also urged on appeal that she had established a right to one-third of the recovery for attorney's fees under former Article 8307, section 6a. The court held, "[A]s a matter of law, Prewitt forfeited her right to attorney's fees." *Prewitt and Sampson v. City of Dallas, supra* at 723. We find *Prewitt and Sampson* to be distinguishable. First, the City in the present case agreed to pay Ellis one-third of its subrogation interest as attorney's fees. Second, there was evidence that the City failed to initially document all of its payments. Third, there was evidence that Ellis sent the City a check for an amount that he thought had been agreed to as the amount owed to the City.

We find the reasoning of the supreme court in *Burrow v. Arce,* 997 S.W.2d 229 (Tex.1999), to be applicable in this case. In *Burrow,* the court extensively reviewed the forfeiture of attorney's fees by an attorney who breached a fiduciary duty owed to his client. The supreme court noted that the forfeiture "rule is not dependent on the nature of the attorney-client relationship ... but applies generally in agency relationships." The court concluded that, although contested fact issues may be resolved by a jury, the ultimate decision regarding the equitable remedy of forfeiture of attorney's fees is discretionary but "must be made by the court." *Burrow v. Arce, supra* at 245. The supreme court set out several factors to be considered by the trial court, including the gravity and timing of the attorney's violation, the wilfulness of the violation, the effect of the violation on the value of the attorney's work, any harm to the client, the adequacy of other remedies, and the public interest in maintaining the integrity of attorney-client relationships. *Burrow v. Arce, supra* at 243–44.

■ Because the forfeiture of attorney's fees is a question for the court, the trial court properly refused the City's requested jury instruction, which would have instructed the jury that forfeiture was mandatory. Furthermore, pursuant to *Burrow,* the trial court had discretion in determining whether Ellis should forfeit any or all of his attorney's fees. The trial court chose not to require any forfeiture. Although Ellis converted the City's money and was susceptible to forfeiting some or all of his attorney's fees, we cannot say that, under the circumstances presented in this case, the trial court clearly abused its discretion in failing to so find. The City's first issue is overruled.

*Prejudgment Interest*

■ In Ellis's third issue and in the City's second issue, the parties complain of the amount awarded by the trial court for prejudgment interest. The City asserts that the trial court erred by tolling the prejudgment interest for the three-year period during which the parties had agreed to dismiss without prejudice the City's cause of action against Ellis so that the City could pursue its appeal in *City of Dallas v. King, supra.* Ellis asserts that

the trial court abused its discretion in awarding prejudgment interest during the period prior to the City's refiling of the petition in this case. It appears that the trial court awarded prejudgment interest for the period from May 16, 1990 (180 days from the date of the City's last demand for payment of its lien) to the date of the agreement between the parties that related to the appeal in *City of Dallas v. King, supra,* and for the period from the City's refiling in this case until the date of judgment.

 Prejudgment interest was properly awarded in this case pursuant to the principles announced in *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 528–33 (Tex.1998). Prejudgment interest begins to accrue on the earlier of (1) 180 days after a defendant receives written notice of a claim or (2) the date suit is filed. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., supra* at 531. Furthermore, an agreement between the parties to temporarily suspend all aspects of a lawsuit may operate to toll the accrual of prejudgment interest. The agreement in this case was entered into by the City and Ellis so that the City could immediately appeal the summary judgment, which the trial court had refused to sever, in favor of the third party tortfeasors and their insurance company. The parties agreed that the City would dismiss its claims against Ellis without prejudice to refiling, that the partial summary judgment against Ellis would be reentered upon refiling, and that Ellis would waive the defenses of laches and limitations. With respect to this issue, the court in *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., supra* at 531, stated, "In most circumstances, this [standstill agreement] would operate to toll the accrual of prejudgment interest while the agreement is in effect. However, par-

ties to a standstill agreement may contractually provide otherwise." Unlike the standstill agreement in *Johnson & Higgins,* the agreement in the present case did not "provide otherwise." Consequently, the trial court did not err in its award of prejudgment interest. Ellis's third issue and the City's second issue are overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.