11th Court of Appeals
Eastland, Texas
Opinion
 
First Equipment Company
            Appellant
Vs.                  No. 11-02-00337-CV – Appeal from Dallas County
Premier Systems, Inc.
            Appellee
 
            This suit arises from a joint venture agreement between Premier Systems, Inc. and First
Equipment Company. Based on the jury’s findings that First Equipment failed to comply with the
agreement, the trial court awarded Premier net actual damages in the amount of $39,041.85. We
affirm.
Background Facts
            Premier was formed in April 1998 by Terrance William Ploegstra and Bill Canavan, the sole
owners. Ploegstra was the president; Canavan was the vice president. Premier sold tier-one
computer hardware such as Compaq, Hewlett Packard, IBM, and Toshiba to medium-sized corporate
accounts with 500 to 5,000 users. Premier’s expertise was designing and implementing networks. 
Ploegstra and Canavan had worked together since 1994, and First Equipment had been their
customer prior to their formation of Premier.
            In 1998, First Equipment’s primary business was financing authorized computer dealers like
Premier. The dealers purchased the hardware from the manufacturer and then sold the equipment
to other companies. Herbert Arnold, president of First Equipment, testified that he first talked to
Ploegstra and Canavan about becoming employees of First Equipment in 1996 in the hopes that First
Equipment could obtain dealer status. However, even with Ploegstra and Canavan as employees,
tier-one manufacturers would not sell directly to First Equipment because First Equipment was a
financing company. About two years later in 1998, the idea of a joint venture was discussed. 
Around the time that the joint venture terminated, First Equipment secured dealer status.
 
The Agreement
            The purpose of the joint venture agreement was for Premier to market and sell computer
equipment on behalf of the joint venture and for First Equipment to provide administrative,
accounting, financial, and other support to Premier. Premier agreed to obtain all the licenses,
permits, and manufacturer approvals necessary to market and sell the computers; to hire and manage
the necessary employees to carry out the business; to develop and service customers; and to be
responsible for the day-to-day activities of its employees. First Equipment agreed to provide Premier
with general accounting services; inventory space; management, administrative, and technical
support; a line of credit; and a means of reselling equipment acquired through trade-ins. The
agreement defined “general accounting services” as “including billing, generation and monitoring
accounts receivable and accounts payable, inventory control, payroll services, benefits assistance,
monthly statements, profit/loss statements, and cash management.” The duration of the agreement
was for two years beginning May 1, 1998. Profits and losses were to be split equally between First
Equipment and Premier.
Undisputed Facts
            The joint venture began in May 1998 and ended six months later in November 1998. Within
the first 10 days, First Equipment ceased billing, and Premier’s office manager began sending the
invoices. Premier leased office space from First Equipment, and their offices were located “down
the hall” from First Equipment’s accounting department. While both Premier and First Equipment
used Peachtree accounting software, data was not shared electronically. Premier’s office manager
used the software to generate invoices and delivered a paper copy to First Equipment. She did not
use it to enter any other data. First Equipment used the software to enter accounts receivable and
accounts payable as well as to prepare reports.
            First Equipment had a warehouse. Problems arose quickly concerning the use of the
warehouse and concerning communication between warehouse employees and Premier. Premier
began having equipment delivered to their office address.
            First Equipment loaned Premier $200,000.00, provided guarantees for Premier, secured a line
of credit worth $750,000.00 from Bank One, and purchased computer equipment from Premier.
During the six-month duration of the joint venture, Premier approached First Equipment about using
a “floor plan” financing arrangement that was common industry practice. Under the floor-plan
financing, interest would not be charged for the first 30 days the computer equipment was “out on
the sales floor.” The idea was rejected by First Equipment. After the collapse of the joint venture
in early November, Premier secured floor-plan financing. For the six-month duration of the joint
venture, Premier paid $19,951.00 in interest. This included interest on the line of credit and the loan
from First Equipment. After the collapse of the joint venture, Premier paid less than $2,000.00
interest in 1999. This amount reflected the use of floor-plan financing.
            In October 1998, concerns arose about the working relationship between Ploegstra and
Canavan. Ploegstra felt that he was doing more work than Canavan. Ploegstra and Canavan agreed
that Ploegstra would make more money and that Canavan would continue to work fewer hours than
and be compensated less than Ploegstra.
            Arnold met with Ploegstra and Canavan on November 2, 1998, and presented them with two
options for dealing with the joint venture. Arnold had spent the weekend before the meeting
concerned about the stability of Ploegstra and Canavan’s working relationship and had drafted both
options. Plan A was entitled “Focus on Selling” and provided that Arnold would immediately
assume the overall responsibilities of running Premier, that First Equipment would purchase 19
percent of the common stock of Premier at the same price paid by Ploegstra and Canavan, and that
First Equipment would have the option of purchasing 32 percent more shares at the same price paid
by Ploegstra and Canavan. First Equipment would exercise its right to own 51 percent of Premier
if, in First Equipment’s opinion, it needed to take control of Premier to liquidate and pay creditors. 
Plan B was entitled “Liquidation” and stated that the joint venture was not working. Plan B called
for the orderly liquidation of assets and liabilities. Ploegstra and Canavan rejected both plans. 
Arnold also advised Ploegstra and Canavan that he was sending out a letter stating that First
Equipment was removing its guarantee.
            Ploegstra and Canavan continued to operate Premier as they had before the November
meeting with Arnold. They paid all of Premier’s debts by early January 1999, including the balance
on the $200,000.00 loan from First Equipment and the line of credit from Bank One. Premier
continued to office in First Equipment’s building and paid a lease of 150 percent more than it paid
during the duration of the joint venture.
            Premier hired a bookkeeper to re-create data for the six-month duration of the joint venture. 
Premier’s 1998 tax return took a CPA approximately nine months to prepare due to the
inconsistencies between Premier’s data and paper reports furnished by First Equipment. Premier had
only income statements and balance sheets from First Equipment which were not backed up with any
kind of ledgers or detail. First Equipment provided electronic data for the first time a few months
before the 2002 trial. The data was not compatible with the version of Peachtree software that
Premier was using.
            During the six-month duration of the joint venture, First Equipment did not bill Premier for
the accounting services that First Equipment provided. After the termination of the joint venture,
First Equipment billed Premier $24,000.00 for the six months of accounting services.
Arguments on Appeal
            First Equipment has briefed 11 points of error. In all of its points of error, First Equipment
makes blanket challenges to the jury’s damage awards by arguing that the evidence either established
or conclusively established facts which would not support the awards. First Equipment only cites
authority for its first, third, and fourth points of error. While references are made to the record on
appeal, no authority is given for the remaining eight points of error. First Equipment fails to recite
any standard of review. 
 Standard of Review
            At the conclusion of Premier’s presentation of evidence, First Equipment moved for an
instructed verdict. In the interest of justice, First Equipment’s challenges will be reviewed as
challenges to the legal sufficiency of the evidence. 
            In considering a “no evidence” challenge to the legal sufficiency, the reviewing court
considers the evidence and the reasonable inferences from the evidence that tend to support the
finding while disregarding the evidence and reasonable inferences to the contrary. Lyons v. Millers
Casualty Insurance Company of Texas, 866 S.W.2d 597 (Tex.1993); Robert W. Calvert, “No
Evidence” and “Insufficient Evidence” Points of Error, 38 TEXAS L. REV. 361 (1960). In
reviewing a challenge that the contrary proposition was established as a “matter of law,” the
reviewing court looks first at the evidence that supports the finding while ignoring all evidence to
the contrary. Dow Chemical Company v. Francis, 46 S.W.3d 237 (Tex.2001); Ellis v. City of Dallas,
111 S.W.3d 161 (Tex.App. - Eastland 2003, no pet’n). If there is no evidence to support the finding,
then the reviewing court examines the entire record to determine if the contrary proposition was
established as a matter of law. Dow Chemical Company v. Francis, supra; Ellis v. City of Dallas,
supra.
Challenge to the Award for Increased Rent
            In its first point, First Equipment contends that the jury’s award of $6,000.00 for increased
rent was “erroneous because the evidence conclusively established that [Premier] consented to the
Venture’s termination.” We disagree. 
            The uncontroverted evidence was that First Equipment did not provide accounting services
as agreed and that Ploegstra and Canavan did not accept either Arnold’s Plan A or Plan B for 
Premier. There was no evidence that Ploegstra and Canavan agreed to terminate the joint venture. 
The first point of error is overruled.
Challenges to the Jury’s Award for Accounting Expenses
            In its third and fourth points, First Equipment contends that Premier should not be allowed 
to recover $25,000.00 for accounting expenses because Premier was not entitled to any electronic
data from First Equipment. First Equipment argues that it owned the electronic data and that,
therefore, Premier was not entitled to the electronic data or to damages for the reentry of any
accounting information.
            We disagree. The electronic data was information kept in the course of general accounting
and, as such, was a function First Equipment was to perform for Premier under the joint venture
agreement. The uncontroverted evidence was that Premier’s 1998 income tax return could not be
prepared based solely on the paper data that had been provided by First Equipment during the joint
venture. The third and fourth points are overruled.
Remaining Challenges
            In its remaining points, First Equipment contends that the evidence conclusively established
that Premier incurred an increase in rent voluntarily, that the evidence conclusively established that
First Equipment provided accurate and appropriate accounting services, that the award for Premier’s
extra expense for accounting practices was voluntary, that the evidence conclusively established that
the extra expense for accounting services was for the independent use and benefit of Premier, that
the evidence conclusively established that the electronic data could not be transferred due to
incompatibility between the parties’ accounting software, that the evidence conclusively established
that the extra accounting services were due to mistakes by Premier’s office manager, and that the
evidence conclusively established that the joint venture made a profit. We disagree.
            The uncontroverted evidence does not support First Equipment’s contentions. These points
are overruled.
Attorney’s Fees
            In the trial court’s judgment, it awarded $15,000.00 attorney’s fees to the party that was the
prevailing party on appeal. That part of the trial court’s judgment has not been questioned on appeal. 
Because Premier Systems, Inc. is the prevailing party on appeal, the trial court’s judgment regarding
attorney’s fees is affirmed.
This Court’s Holding
            The judgment of the trial court is affirmed.
 
                                                                                                JIM R. WRIGHT
                                                                                                JUSTICE
January 30, 2004
Not designated for publication. See TEX.R.APP.P. 47.2(a).
Panel consists of: Wright, J., and
McCall, J., and Dickenson, S.J.