Opinion filed October 8, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed October 8,
2009

 

 

                                                                                                                                                            

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-08-00110-CV

                                                       ________

 

                    GREAT
WESTERN DRILLING, LIMITED, Appellant

 

                                                             V.

 

                                       BILL
ALEXANDER, Appellee

 



 

                                         On
Appeal from the 238th District Court

                                                        Midland
County, Texas

                                                Trial
Court Cause No. CV 44,955

 



 

                                                                   O
P I N I O N

Appellant
Great Western Drilling, Limited (herein Great Western) brings this appeal from
a take-nothing verdict in its suit against appellee Bill Alexander (herein
Alexander).  In the suit, Great Western sought to recover damages suffered by
it because Alexander allegedly conspired with his client Marilyn Paschal
(herein Paschal) to convert certain insurance proceeds it claimed.   For
reasons we later discuss, we affirm the judgment of the trial court.








A
review of the somewhat convoluted history of the events giving rise to this
suit is necessary to a proper discussion of the appeal.  Originally, Great
Western filed suit against Paschal asserting that Paschal had conspired with
her husband Alan Paschal, who died on June 23, 2003, to embezzle money from
Great Western, which was used to purchase insurance policies issued by Cuna
Mutual Life Insurance Company,  Stonebridge Life Insurance Company, and  U.S.
Financial Life Insurance Company with death benefits totaling $775,096[1]
received by Paschal after the death of her husband.  Great Western further
sought the imposition of a constructive trust on those proceeds.  

Later,
and in the course of that proceeding, Great Western also sued Alexander and
William R. Bowden Jr. (herein Bowden), Paschal=s former attorney, for conversion of the
proceeds of those policies.  Before the trial of the claims against Paschal,
the trial court severed the portion of the suit involving Great Western=s claims against Alexander
and Bowden and ordered a separate trial of those matters. The original suit
against Paschal was tried and, on February 5, 2005, resulted in a judgment
against Paschal in favor of Great Western.      

Later,
and before trial of this severed cause, Great Western settled with Bowden, and
the case proceeded to trial against Alexander alone.  That trial commenced on
October 29, 2007, and on November 1, 2007, the case was submitted to the jury
on three issues.  

In
its charge, because of its pretrial partial summary judgment rulings, the trial
court instructed the jury that (1) Great Western=s
stolen funds were used to pay the insurance premiums on the Cuna, U.S.
Financial, and Stonebridge policies in dispute in Cause No. 44196 (the other
cause); (2) Great Western was the equitable owner of the Cuna, U.S. Financial,
and Stonebridge policies; (3) former defendant Bowden collected the Cuna, U.S.
Financial, and Stonebridge policies in the amount of $775,096; (4) on September
16, 2003, Bowden delivered proceeds from the policy proceeds to Paschal in the
amount of $732,614.15; and (5) Paschal delivered those proceeds to  Alexander
on September 16, 2003.

The
trial court then submitted three questions to the jury for its decision.  The
first question and instruction submitted was as follows:

Did
Bill Alexander on September 16, 2003 have notice that Great Western was the
owner of the life insurance proceeds paid to Marilyn Paschal by Cuna,
Stonebridge and U.S. Financial?

 








You are
instructed that the term @Notice@ is broadly defined as
information concerning a fact actually communicated to a person, derived by him
from a proper source, or presumed by law to have been acquired.  Notice may be
actual or constructive.  Actual notice results from personal information or
knowledge, as well as those facts which reasonable inquiry would have
disclosed.  Constructive notice is notice the law imputes to a person not
having personal information or knowledge.

 

Jury
Questions Nos. Two and Three were conditioned upon an affirmative answer to
Question No. One.  Jury Question No. Two inquired if, on September 16, 2003, or
September 22, 2003, Alexander converted personal property of Great Western in
the form of the life insurance proceeds paid to Paschal by the life insurance
companies.  In connection with Jury Question No. Two, the jury was
instructed as to the legal definition of the term Aconvert.@

Jury
Question No. Three, with an instruction, inquired as to the amount of
compensation to which Great Western would be entitled if the jury found a
conversion.  In accordance with the instruction, because of its negative answer
to Jury Question No. One, the jury did not answer Questions Nos. Two and Three.

In
pursuing this appeal, Great Western presents five issues for our review.  In
the first three of those issues, it contends the trial court erred in not
granting its motion for judgment notwithstanding the jury verdict because the
evidence established as a matter of law that (1) Alexander converted life
insurance proceeds belonging to it in the amount of $250,000,
(2) Alexander was on Anotice@ that Great Western was the
owner of the life insurance proceeds, and (3) the evidence established as a
matter of law that the funds converted by Alexander were in the amount of
$250,000 even though the jury did not answer Questions Nos. Two and Three.  In
support of its contention that it was entitled to a judgment notwithstanding
the jury verdict, Great Western also cites and relies upon the trial court
pretrial summary judgment ruling that gave rise to the declarations given the
jury in the court=s
charge as being sufficient as a matter of law to entitle it to a judgment
notwithstanding the verdict that Alexander had converted funds in the amount of
$250,000. 








In
its fourth issue, Great Western posits that its motion for new trial should
have been granted because the jury=s
answer to Question No. One was so against the great weight and preponderance of
the evidence as to be manifestly unjust.  In its fifth issue, and in the
alternative, it contends that its motion for new trial should have been granted
because the trial court erred in admitting the expert testimony of Alexander=s witness Steven L. Lee
because his testimony included opinions on pure questions of law, lacked
relevance, and was unreliable, all of which combined to probably cause the
rendition of an improper judgment.

At
trial, in addition to Lee=s
testimony, portions of Bowden=s
deposition and Alexander=s
deposition were admitted into evidence, and Alexander also testified in
person.  Of necessity, the issues presented by Great Western require us to
reference some of the pertinent trial evidence.

In
the course of his testimony, Alexander averred that he first heard of Alan=s death by reading a
newspaper account on June 24, 2003.  He also said that in the past, and prior
to that time, he had drafted a marital agreement for Alan that provided that
Alan would obtain a life insurance policy on himself that would pay Paschal one
million dollars in the event of Alan=s
death.

Alexander said that he received two calls from Paschal
on September 4, 2003, and met her at his office on September 5, 2003.  At that
time, Paschal told him that she needed to hire a lawyer because Great Western
had sued her.  On September 10, 2003, he prepared, and entered into, an
employment contract with Paschal.  Although the contract provided for the
payment to him of an undivided one-third contingent fee Ain the funds in dispute in the litigation
whereby Great Western Drilling, Limited is attempting to recover the insurance
proceeds paid to you and to be paid to you, totaling One Million One Hundred
Twenty Five Thousand ($1,125,000.00),@
Alexander testified that he had not actually seen any pleadings in the case nor
had he seen any evidence to support Great Western=s
claims.  He acknowledged that Ahe
knew there was a dispute.@ 
On that day, Paschal gave him a check for a Anonrefundable@ attorney=s fee of $200,000 and an
expense advance of $50,000.

On September 10, Alexander also wrote Bowden, Paschal=s criminal lawyer, and said
that he had been retained in the civil litigation and that Paschal wanted the
money on deposit in Bowden=s
trust account forwarded to him.  He averred that Paschal did not specifically
identify the money, and he did not ask her where it came from.  On September
16, 2003, Paschal brought him a check for $732,614.51 drawn on Bowden=s trust account, which
Alexander deposited in his trust account.  Because Paschal=s earlier check for
$250,000 to him had not been honored by the bank as the result of a letter from
Great Western, she paid him the $250,000 from the funds in the trust account.








After
reviewing Great Western=s
pleadings in the suit against Paschal, Alexander opined that the pleadings were
not to be taken as true until proved and that he owed an obligation of loyalty
to Paschal and had no duty to Great Western.  He said that Paschal was the named
beneficiary under the policies, that he was not aware of anyone who had a
superior right to the proceeds, and that she denied to him that she had ever
entered into a conspiracy with her husband to embezzle funds or that she had
any knowledge of any embezzlement by her husband.  He admitted that he did not
explore trying to get his fee from other assets that might have belonged to
Paschal.

       Discussion

A
trial court may grant a motion for judgment notwithstanding the verdict if a
directed verdict would have been proper.  Tex.
R. Civ. P. 301; Fort Bend County Drainage Dist. v. Sbrusch, 818
S.W.2d 392, 394 (Tex. 1991).  However, if the evidence is factually
insufficient, as opposed to legally insufficient, the trial court may not grant
a judgment notwithstanding the verdict.  Alm v. Aluminum Co. of Am., 717
S.W.2d 588, 594 (Tex. 1986).  A reviewing court reviews a trial court=s denial of a motion for
judgment notwithstanding the verdict using the same standard by which it
reviews a legal sufficiency challenge.  Navarette v. Temple Indep. Sch.
Dist., 706 S.W.2d 308, 309 (Tex. 1986).  When a party challenges the legal
sufficiency of an adverse finding on an issue as to which he bears the burden
of proof, he must demonstrate on appeal that the evidence conclusively
established all the vital facts in support of the issue.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001).  In reviewing a matter of law
challenge, the court must examine the record for evidence that supports the
finding, while ignoring all evidence to the contrary.  Id.  In
conducting its review, the reviewing court must indulge every reasonable
inference to support the finding, crediting favorable evidence, if a reasonable
jury could have done so, and disregarding contrary evidence unless a reasonable
jury could not have done so.  City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005).  As long as the evidence falls within the zone of reasonable
disagreement, a court may not substitute its judgment for that of the
factfinder.  Id. at 822.  A reviewing court must uphold the jury verdict
if more than a scintilla of evidence supports the finding.  Garcia v. Ins.
Co. of State of Pa., 751 S.W.2d 857, 858 (Tex. 1988).








In
reviewing a factual sufficiency challenge on an issue upon which the appellant
had the burden of proof, the appellant must show that the adverse finding is
against the great weight and preponderance of the evidence.  Dow Chem. Co.,
46 S.W.3d at 242.  The reviewing court must consider and weigh all the evidence
and may only set aside a verdict if the evidence is so weak or the finding is
so against the great weight and preponderance of the evidence as to be clearly
wrong and unjust.  Recognition Commc=ns,
Inc. v. Am. Auto. Ass=n,
Inc., 154 S.W.3d 878, 889 (Tex. App.CDallas
2005, pet. denied).  The jury is the sole judge of the credibility of the
witnesses and the weight to be given their testimony.  City of Keller,
168 S.W.3d at 819; Jones v. Tarrant Utility Co., 638 S.W.2d 862, 866
(Tex. 1982).  When enough evidence is before the factfinder that reasonable
minds could differ on the meaning of the evidence or the conclusions or
inferences to be drawn from that evidence, the court may not substitute its
judgment for that of the jury.  Herbert v. Herbert, 754 S.W.2d 141, 144
(Tex. 1988).

Issues 1, 2, 3, and 4

In
argument under its first four issues, Great Western posits that Alexander=s right to retain any part
of the insurance proceeds was no greater than the right of Paschal if Alexander
had knowledge of Great Western=s
claims to those insurance proceeds even before those claims were adjudicated. 
It then reasons that there Ais
no evidence in the record that Alexander lacked notice of facts which
reasonable inquiry would have disclosed at the time he received his
nonrefundable  retainer that Great Western=s
embezzled funds had been used in the payment of the life insurance premiums.@  Thus, it concludes that,
because Alexander=s
denial of notice is conclusively negated by the letter agreement with Paschal
and his testimony that he knew there was a dispute over ownership of the
proceeds, it was entitled to a directed verdict on its conversion claim against
him. 








That
argument requires us to review the duties and obligations of an attorney.  That
review is important because it would be no exaggeration to say that the
existence of a free and untrammeled bar is essential to the existence of a free
democracy and to the fundamental protection of the rights of the citizens of
such a democracy.  Indeed, it has been iterated and reiterated that the public
has an interest in Aloyal,
faithful and aggressive representation by the legal profession.@  Maynard v. Caballero,
752 S.W.2d 719, 721 (Tex. App.CEl
Paso 1988, writ denied).  In pursuing that obligation, an attorney has the
obligation and duty of zealously representing his client within the boundaries
of the law.  See Bradt v. West, 892 S.W.2d 56, 71 (Tex. App.CHouston [1st Dist.] 1994,
writ denied).  Indeed, in the seminal case of Morris v. Bailey, 398
S.W.2d 946, 947 (Tex. Civ. App.CAustin
1966, writ ref=d n.r.e.),
the court articulated that, in fulfilling his or her duty, an attorney has Athe right to interpose any
defense or supposed defense and make use of any right in behalf of such client
or clients as [the attorney] deemed proper and necessary, without making
himself subject to liability in damages.@ 
See also Renfroe v. Jones & Assocs., 947 S.W.2d 285, 288
(Tex. App.CFort Worth
1997, writ denied).

Great
Western acknowledges and supports the general rule that an attorney has no duty
to anyone but his or her client.  However, it argues, as with most general
rules, there is an exception to this one.  For example, it cites Likover v.
Sunflower Terrace II, Ltd., 696 S.W.2d 468, 472 (Tex. App.CHouston [1st Dist.] 1985,
no writ), for the proposition that an attorney is liable if the attorney
knowingly commits a fraudulent act that injures a third person or if he
knowingly enters into a conspiracy to defraud a third person.  In that case,
the plaintiff had alleged, and a jury found, that the attorney had helped his
client in perpetrating a fraudulent business scheme involving the sale of an
apartment complex.  In this case, there were no pleadings and, indeed, no fact
findings by a trier of fact that Alexander had participated in fraud or was
engaged in a conspiracy.

Great
Western also cites and relies upon the decision by this court in Ellis v.
City of Dallas, 111 S.W.3d 161 (Tex. App.CEastland
2003, no pet.).  In that case, this court, approving the definition of
conversion as Athe
exercise of dominion and control over property inconsistent with, and in denial
of, the true owner or the party having the right of possession,@ affirmed a trial court
judgment against an attorney for the conversion of a workers= compensation settlement he
received and deposited in his trust account for his personal injury client.  Id.
at 163-166.  However, in that case, we specifically noted that the attorney
Awas familiar with the
workers= compensation
laws in effect at that time and knew that the City had the right to recover, to
the extent of the workers=
compensation payments it had made to or on behalf of [his client], the >first money= from [his client=s] settlement with the
third parties.@ Id.
at 164-65.  That is not the case here.  At the time Alexander received the
funds in his trust account, there was no such perfected or legal right to the
funds in question.








Great
Western additionally cites the cases of Nacol v. Metallic Development Corp.,
614 S.W.2d 172 (Tex. Civ. App.CFort
Worth 1980, writ dism=d);
McAnelly v. Chapman, 18 Tex. 198 (1856); and Oliver v. Chapman,
15 Tex. 400 (1855), in support of its proposition that Alexander was guilty of
conversion.  However, those cases are distinguishable.  In Nacol, again
an appeal from a trial verdict, the trial judge made express findings that
Nacol had knowingly bought stolen property in the past, that the seller of the
metals there in question Amay
or may not@ have told
Nacol that they were stolen, that Nacol had invoked the privilege against self-incrimination
when asked about his knowledge that the metals were stolen, and that Nacol had
advised Metallic that the raising of an award for return of the metals would
assure recovery.  614 S.W.2d at 175.  The appellate court held that those facts
were sufficient to support a finding of notice and willful conversion.  Id. 
No such notice facts are shown here.

Both
Oliver and McAnelly were appeals from jury findings and concerned
the question whether the evidence was sufficient to support those findings.  In
Oliver, an action to set aside certain deeds from the plaintiff to the
defendant, the court noted that evidence such as the plaintiff=s feebleness of body and Aimbecility of mind,@ confidential relations
between the parties, the absence of any consideration, the Aembarrassed state of his
affairs,@ and Ahis enfeebled condition of
body and mind@ were
sufficient to justify the finding of fraud by the jury.  Oliver, 15 Tex.
at 403.  In this case, of course, there are no such findings.  In McAnelly,
the jury had found that McAnelly knew of the plaintiff=s claim to the property there in question but Ahe carried it off and
disposed of it.@  McAnelly,
18 Tex. at 199.

Likewise,
in Newton v. Porter, 69 N.Y. 133 (1877), also cited by Great Western,
the trial court expressly found that the defendant=s attorneys had actual notice of the theft of
the bonds there in question and the use of the proceeds of their sale at the
time they received the notes and mortgages.  Id. at 140.  In Pena v.
Toney, 160 Cal. Rptr. 4 (Cal. 3d Dist. Ct. App. 1979), the court held an
attorney was not a bona fide purchaser with respect to an automobile received
by him as a fee for representation in a criminal case.  The automobile and
certificate of title were in possession of the police, and a cause of action
could not be maintained for property to which the attorney never acquired title. 
Id. at 7-9.  The facts in those cases are distinguishable from those
extant here.








To
bring a conversion claim, an aggrieved party must have either ownership,
possession, or the right to immediate possession of the property.  Crutcher v.
Cont=l Nat=l Bank, 884 S.W.2d 884,
888 (Tex. App.CEl Paso
1994, writ denied).  As we have noted, at the time it retired to consider its
verdict, the jury had before it Alexander=s
testimony that on September 16, 2003, although he did know of the pending
dispute and was employed to represent Paschal, his client was the named
beneficiary under the policies and that she had denied to him any participation
in embezzlement. Properly charged as to the legal meaning of conversion notice,
the jury finding of Alexander=s
lack of notice was not so against the great weight and preponderance of the
evidence as to be manifestly unjust.

Accordingly,
Great Western=s first
four issues must be, and are hereby, overruled.

                                                                         Issue
5

In
its fifth issue, Great Western argues it should have been granted a new trial
because Alexander=s
expert witness Steven L. Lee (herein Lee) expressed opinions on pure questions
of law that lacked relevance, were demonstrated to be unreliable, and combined
to probably cause the rendition of an improper judgment.

In
considering this challenge, we are governed by the standard of review on a
trial court=s ruling
on a motion for new trial, which is whether it abused its discretion in making
that ruling.  Dir., State Employees Workers= Comp. Div. v. Evans, 889 S.W.2d 266, 268
(Tex. 1994).  A trial court abuses its discretion when its ruling is arbitrary,
unreasonable, or without reference to any guiding rules or principles.  K-Mart
Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000).  By
virtue of Texas Rule of Evidence 702, expert opinion testimony is admissible if
that testimony will assist the trier of fact to determine a fact in issue,
provided the expert is qualified as an expert by knowledge, skill, experience,
training, or education.  Tex. R. Evid.
702.   The expert=s
testimony must also be relevant to the issues in the case and must be based
upon a reliable foundation.  Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623,
628 (Tex. 2002).

Specifically,
Great Western challenges the admissibility of Lee=s
testimony that Alexander=s
reading of its pleadings created no duty on his part to Great Western, that it
was Aimpossible@ that mere allegations alone
could create such a duty, and that retaliatory suits against attorneys were Ahighly improper.@  It also reasons that Lee=s testimony was not
reliable because he had not reviewed the filings in the Paschal case and could
not remember if he had reviewed the judgment in that case, the jury charge in
that case, or this court=s
opinion in the appeal of that case.  Great Western also references Lee=s admission as to his
unfamiliarity with cases involving constructive trusts along with his admission
that he thought such cases applied to land but had not looked it up.








            It
is well established that in instances in which the jury is equally competent to
form an opinion about the ultimate fact issues or the expert=s testimony is within the
common knowledge of the jury, the trial court should exclude the expert=s testimony.  K-Mart
Corp., 24 S.W.3d at 360.  No witness is authorized to offer an opinion on a
pure question of law.  Mega Child Care, Inc. v. Tex. Dep=t of Protective &
Regulatory Servs., 29 S.W.3d 303, 309 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  However,
an expert witness may offer an opinion on a mixed question of law and fact when
a standard or measure is fixed by law and the question is whether the person or
conduct measures up to that standard.  Id.

In
contending that the admission of Lee=s
testimony requires reversal, Great Western places primary reliance upon the
rationale espoused by the court in Greenberg Traurig of N.Y., P.C. v. Moody,
161 S.W.3d 56, 95 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).  That case involved a suit brought by investors
against attorneys who had represented a corporation for securities fraud and
other fraud claims.  At trial, the jury awarded the investors a substantial
money judgment against the attorneys.  In the course of the trial, the
plaintiffs had called two attorney experts, one of whom was a law professor who
specialized in corporate law and the other was a former Texas Supreme Court
justice.  Each of the witnesses, over objection, testified as to the duties of
an attorney to his client.  In its review, the appellate court noted that the
witnesses had given opinions that were incorrect statements of the law, had
given opinions on issues that were not relevant to the matters in dispute, and
had given opinions that should not have been admitted into evidence.  Id.
at 97-98.  It also noted that the testimony of the two witnesses covered more
than eight days, over one-half of the sixteen-day trial time, and that all the
other witnesses were fact witnesses or attorney=s
fee experts.  Id. at 99-100.  It was in view of all this that the
appellate court concluded that the admission of the testimony was not only
error but probably caused the rendition of an improper judgment.  Id. at
100.








However,
in this case, Great Western had alleged that Alexander, admittedly an attorney
representing an opposing party, had violated some sort of duty toward it that
entitled it to recover damages and, indeed, questioned Alexander extensively
about whether he felt he owed any duty toward it.  As contrasted to the duties
and obligations owed to his or her client by an attorney, the questions in the Greenberg
case, the obligations and duties an attorney might owe to the opposing party,
if any, are matters distinct from the questions before that court.  Because
those are questions and matters beyond the jurors=
understanding as laypersons, the admission of properly qualified expert
testimony to aid the jury is permissible.  See Alexander v. Turtur &
Assocs., Inc., 146 S.W.3d 113, 119-20 (Tex. 2004); Kothmann v. Cook,
No. 07-05-0335-CV, 2007 WL 1075171, at *4 (Tex. App.CAmarillo April 11, 2007, no pet.) (mem. op.).

Additionally,
we are instructed by Texas Rule of Appellate Procedure 44.1(a)(1) that no
judgment should be reversed on appeal on the ground of trial court error unless
the error complained of probably caused the rendition of an improper judgment. 
Tex. R. App. P. 44.1(a)(1); see
also GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 620 (Tex. 1999).  The
first question, as submitted to the jury, inquired whether on September 16,
2003, Alexander had notice that Great Western was the owner of the insurance
proceeds in question and did not inquire whether Alexander owed
Great Western any duty that he had breached.  That being so, Lee=s testimony as to the
duties of an attorney was not as material and closely connected to the question
actually submitted to the jury as was the testimony referenced in the Greenberg
case.  Under the record in this case, Lee=s
testimony  was not calculated to cause the rendition of an improper jury
verdict.  Thus, its admission, even if erroneous, did not probably cause the
rendition of an improper jury verdict. Great Western=s fifth issue is overruled.

Alexander
has also presented two cross-points that he characterizes as additional grounds
for affirmance.  However, because our disposition of Great Western=s issues requires us to
affirm the trial court judgment, it is not necessary for us to discuss those
cross-points.

Alexander=s
Cross-Appeal Point

              In
his cross-appeal point, Alexander contends Great Western=s lawsuit against him was frivolous and
groundless because it lacked both legal and evidentiary support.  Thus, he argues,
the trial court abused its discretion in failing to modify the judgment to
award sanctions against Great Western and/or its counsel.

        In his
motion seeking the assessment of sanctions against Great Western, Alexander
cites and relies upon the provisions of Tex.
R. Civ. P. 13 and Tex. Civ. Prac.
& Rem. Code Ann. '
10.001(2), (3) (Vernon 2002).  Although the parties differ considerably
concerning their application, they agree about the rules of law governing the
assessment of sanctions,








 Rule
13 authorizes the imposition of sanctions if an attorney files an instrument
that is groundless and is brought in bad faith or for the purposes of
harassment.  For the purposes of Rule 13, Agroundless@ means no basis in law or
in fact and not warranted by good faith argument for the extension,
modification, or reversal of existing law.  Rule 13.  To determine if a
pleading is groundless, a trial court is to use an objective standard in
determining if a party or its counsel made a reasonable inquiry into the legal
and factual bases of its claims at the time the pleading was filed. In re
United Servs. Auto. Ass=n,
76 S.W.3d 112, 116 (Tex. App.CSan
Antonio 2002, orig. proceeding).  The decision whether to impose sanctions is
within the trial court=s
sound discretion, and a court of appeals will not set aside a sanction unless
an abuse of discretion is shown.  Mattly v. Spiegel, Inc., 19
S.W.3d 890, 895 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).  The trial court is entitled to consider the
entire history of the case before it.  Allied Chem. Co. v. DeHaven, 824
S.W.2d 257, 262 (Tex. App.CHouston
[14th Dist.] 1992, no writ).  ABad
faith@ is not simply
bad judgment or negligence but is, rather, the conscious doing of wrong for
dishonest, discriminatory, or malicious purpose.  Armstrong v. Collin County
Bail Bond Bd., 233 S.W.3d 57, 63 (Tex. App.CDallas
2007, no pet.).  Our supreme court has analyzed standards under Tex. Civ. Prac. & Rem. Code Ann.
' 10 (Vernon 2008) by
the same standards and presumptions as Rule 13 of the Texas Rules of Civil
Procedure.  See Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007).

Suffice
it to say, we have carefully considered the question, and considering the
entire history of this case with which the trial court was familiar, we cannot
find the trial court abused its discretion in its refusal to award Alexander
sanctions.  Alexander=s
cross-appeal point is overruled.

In
final summary, all of Great Western=s
issues are overruled; Alexander=s
cross-appeal point is overruled; and the judgment of the trial court must be,
and is hereby, affirmed.

 

 

JOHN T. BOYD

SENIOR JUSTICE

 

October 8, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Boyd, S.J.[2]









[1]Two other life insurance policies had been purchased by
the Paschals from United of Omaha that provided for a total of $450,000 in
death benefits.  The proceeds from those policies were interpleaded by the
insurer and later collected by Great Western to partially satisfy its judgment
against Paschal.





[2]John T. Boyd, Retired Chief Justice, Court of Appeals,
7th District of Texas at Amarillo, sitting by assignment.